Clarisse Chung (SB#260894)
Crossroads Legal Group
800 W. El Camino Real Ste 180
Mountain View, CA 94040
(650) 332-4905
clarisse@crossroadslegalgroup.com
Attorneys for Plaintiff

Michael Yesk (SB#130056)
Yesk Law
70 Doray Drive, Suite 16
Pleasant Hill, CA 94523
(925) 849-5525
yesklaw@gmail.com
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

GEORGE B. NOBLE AND PATRICIA L. NOBLE,

Plaintiff,

v.

CALIBER HOME LOANS, INC.; U.S. BANK TRUST, N.A. AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST; LSF9 MORTGAGE HOLDINGS, LLC; CLEAR RECON CORP.; BANK OF AMERICA, N.A.; and DOES 1-10, INCLUSIVE,

Defendants

Case No. 4:17-cv-01053-CW

**PLAINTIFF'S OPPOSITION TO DEFENDANT CALIBER HOME LOANS, INC. AND U.S. BANK TRUST, N.A.'S MOTION TO DISMISS COMPLAINT**

Hearing: May 2, 2017
Time: 2:30 p.m.
Place: Courtroom 2 – 17th Floor

Hon. Claudia Wilken

**Table of Contents**

Table of Authorities ....................................................................................................3

Cases 3

Statutes 3

Other Authorities ....................................................................................................3

Memorandum of Points and Authorities ....................................................................................................5

Introduction ....................................................................................................5

Factual Background and Procedural History ....................................................................................................5

Standard of Review ....................................................................................................8

Discussion ....................................................................................................8

I. Plaintiffs' Claims Are Not Barred by Res Judicata ....................................................................................................8

II. Plaintiffs Have Stated Facts Sufficient to State a Claim for RESPA Violations 11

III. Plaintiff Has Stated Facts Sufficient to State a Cause of Action for Wrongful Foreclosure ....................................................................................................14

IV. Plaintiff Has Stated Facts Sufficient to State a Cause of Action for Violations of California Civil Code § 2924.17 ....................................................................................................17

Conclusion....................................................................................................18

**Table of Authorities**

Cases

*Ashcroft v. Iqbal*, 129 U.S. 1937, 1949 (2009) ........ 3

*Barrionuevo v. Chase Bank, N.A.* (N.D. Cal. 2012) 885 F.Supp.2d 964 ........ 7, 8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) ........ 3

*Castillo v. Skoba*, 2010 WL 3986953 ........ 7

*Dimock v. Emerald Properties, Inc.* (2008) 81 Cal.App.4th 868 ........ 10

*Glaski v. Bank of America, N.A.,* (2013) 218 Cal. App. 4th 1079 ........ 8

*Gomes v. Countrywide*, 192 Cal.App.4th 1149, 1154 (2011) ........ 7

*Herrara v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366 ........ 8

*Javaheri v. JP Morgan Chase Bank, N.A.* (C.D. Cal. June 2, 2011, No. CV10-08185ODW) 2011 U.S. Dist. Lexis 62152 ........ 8

*Jolley v. Chase Home Finance, LLC* (2013) 213 Cal. App. 4th 872 ........ 4

*Lee v. City of Los Angeles*, 250 F.3d 668 ........ 9, 11

*Lona v. Citibank, N.A.* (2011) 202 Cal. App. 4th 89 ........ 10

*Monterossa v. Superior Court of Sacramento County* (2015) 237 Cal. App. 4th 747 ........ 4, 5

*Newsom v. Countrywide Home Loans, Inc.*, 714 F.Supp.2d 1000 ........ 9, 11

*Ohlendorf v. Am. Home Mortg. Servicing* (E.D. Cal. 2010) 279 F.R.D. 575 ........ 8

*Sacchi v. Mortgage Electronic Registration Systems, Inc.* (C.D. Cal. 2011) 2011 WL 2533029 . 7

*Tamburri v. Suntrust Mortgage, Inc.* (N.D. Cal. 2011) 2011 WL 6294472 ........ 7, 10

Statutes

Cal. Civ. Code § 2924.17 ........

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs GEORGE B. NOBLE AND PATRICIA L. NOBLE ("Plaintiffs") hereby submits this opposition to Defendants CALIBER HOME LOANS, INC.("Caliber" or "Defendant") and U.S. BANK TRUST, N.A. AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST's ("U.S. Bank" or "Defendant") Motion to Dismiss Plaintiff's Complaint ("Motion"). Plaintiffs maintain that they have stated valid claims for wrongful foreclosure, violations of the California Homeowner Bill of Rights ("HBOR"), and violations of the Real Estate Settlement Procedures Act ("RESPA") by Defendants. Plaintiffs' Complaint alleges multiple, specific factual bases indicating that Defendants lack standing to foreclose and violated RESPA provisions requiring them to respond to Plaintiffs' requests for information. As such, Defendants' Motion should be denied.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs' Complaint ("Complaint") arises out of Defendants' violations of provisions of the Real Estate Settlement Procedures Act ("RESPA") and the wrongful actions taken by Defendants in their attempts to foreclose upon real property purchased by Plaintiffs. On or around 2007, Plaintiffs took out a loan with the now-defunct Countrywide Home Loans, Inc. ("Countrywide") secured by real property located at 56 Hennessey Ridge Road, St. Helena, California 94574 ("Subject Property").

On or around November 22, 2011, Mortgage Electronic Registration Systems, Inc. ("MERS") recorded a Corporation Assignment of Deed of Trust, assigning all beneficial interest in Plaintiffs' DOT together with the note to Defendant Bank of America, N.A. ("BANA" or "Defendant"). On or around November 6, 2014, Michael D. Fitts as a purported "Assistant Vice President" of BANA executed an Assignment of Deed of Trust in which BANA purported to assign all beneficial interest in Plaintiffs' DOT to LSF9 Mortgage Holdings, LLC. Though "Bank of America, N.A." was printed on the signature line of the Assignment of Deed of Trust, "Michael D. Fitts" and "Assistant Vice President" were handwritten on the document.

On November 7, 2014, Plaintiffs sent BANA a qualified written request for information under 12 U.S.C. 2605(e) and 12 C.F.R. 1024.36. Among other things, Plaintiffs sought information relating to the identity of the owner of their mortgage; the transfer history of their loan; and their servicing file. BANA's response to Plaintiffs' request for information ("RFI") contained numerous deficiencies, including but not limited to the following: BANA failed to supply Plaintiffs with the name, address and telephone number of the trustee overseeing the issuing entity; BANA failed to supply Plaintiffs with the name, address, telephone number, and position of an officer under the trustee's employ; and BANA did not provide Plaintiffs with a loan identification number that was assigned to their loan and through which the trustee would recognize Plaintiffs' loan account.

BANA also refused to supply information relating to the transfer history of Plaintiffs' loan by failing to respond to Plaintiffs' request for the MERS MIN Summary and a MERS Milestones Report. This is despite the fact that Plaintiffs informed BANA in its RFI that Plaintiffs were unable to find their loan on the MERS system using the MIN number listed on their Deed of Trust.[1] BANA's response to Plaintiffs' request for information regarding their servicing file was also incomplete. Among other things, BANA refused to send a servicing file that reflected the most recent data and sent outdated servicing notes that did not even reflect the fact that Plaintiffs had engaged BANA for loss mitigation review. Some information and documents provided only covered activity on Plaintiffs' account up to January 1, 2014.

On November 20, 2014, Plaintiffs – who had been informed that Defendant Caliber Home Loans, Inc. ("Caliber" or "Defendant") was the new servicer of their loan – sent Caliber a request for information under 12 U.S.C. 2605(e) and 12 C.F.R. 1024.36. Among other things, Plaintiffs sought information relating to the identity of the owner of their mortgage; the transfer

[1] Though Plaintiffs were able to find what appeared to be their Deed of Trust on the MERS system by performing a searching using George Noble's social security number and property zip code, the record number associated with that MIN was *not* the MIN listed on Plaintiffs' Deed of Trust.

history of their loan; and their servicing file. Caliber's response was due on December 8, 2014 but was not mailed by Caliber until December 31, 2014. Caliber's response to Plaintiffs' RFI also contained numerous deficiencies, including but not limited to the following: Caliber failed to supply Plaintiffs with the name, address, telephone number, and position of an off;icer under the trustee's employ; and Caliber did not provide Plaintiffs with a loan identification number that was assigned to their loan and through which the trustee would recognize Plaintiffs' loan account. Caliber also refused to supply information relating to the transfer history of Plaintiffs' loan by failing to respond to Plaintiffs' request for the MERS MIN Summary and a MERS Milestones Report. Though Caliber stated in its letter that it would contact Plaintiffs' prior servicer and send supplemental information once it had been obtained from the prior servicer, Plaintiffs received no further communication from Caliber regarding this request.

Caliber's response to Plaintiffs' request for information regarding their servicing file was also incomplete. Among other things, Caliber refused to send a servicing file that reflected the most recent data and refused to provide some of the information Plaintiffs requested related to the Transaction History on their loan. In response to Plaintiffs' request for information regarding the owner of their mortgage, Caliber claimed that the investor of Plaintiffs' loan was U.S. Bank Trust, N.A. as Trustee for LSF9 Master Participation Trust.

Plaintiffs allege on information and belief that the LSF9 Master Participation Trust was merely a participation agent to the securitization of Plaintiffs' loan. As such and based on an investigation Plaintiffs had conducted on the ownership of their loan, Plaintiffs further allege that the LSF9 Master Participation Trust is not the beneficiary of Plaintiffs' deed of trust because it does not own the entirety of Plaintiffs' loan but rather only a forward interest in its servicing rights. Plaintiffs allege information and belief that the LSF9 Master Participation Trust therefore lacks the authority and standing to initiate foreclosure proceedings on Plaintiffs' home.

Notwithstanding this fact, the LSF9 Master Participation Trust has been attempting to foreclose on the Subject Property. On or around, February 10, 2017, Plaintiffs received a notice of trustee's sale.

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a Motion to Dismiss tests the ability of a complaint to allege facts sufficient to state a plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). A complaint that contains sufficient factual allegations "to raise a right to relief above the speculative level" will survive a motion to dismiss. *Id*. A complaint must state a claim that is facially plausible, requiring facts showing more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 U.S. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In evaluating whether a complaint meets this standard, the court is not required to assume the truth of Plaintiff's legal conclusions but must take Plaintiff's factual allegations as true, and then "determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950.

## IV. DISCUSSION

### A. Plaintiffs' Claims Are Not Barred by Res Judicata

Contrary to Defendants' assertion in their Motion, Plaintiffs' claims are not barred by *res judicata*. First, Defendants do not even apply the correct standard to determine if Plaintiffs' claims are barred. Defendants choose to focus on an esoteric claim preclusion standard when it is well-established that California's *res judicata* standards are governed by the "primary rights" doctrine. Second, even under the terms of the standard referenced by Defendants, it is clear that Plaintiffs are not estopped from bringing their current claims.

To determine the preclusive effect of a state court judgment federal courts look to state law. *Palomar Mobilehome Park Ass'n v. City of San Marcos*, 989 F.2d 362, 364 (9th Cir.1993). "California's res judicata doctrine is based on a primary rights theory." *Manufactured Home Communities, Inc. v. City of San Jose,* 420 F.3d 1022, 1032 (9th Cir. 2005). As explained by the California Supreme Court, the primary rights theory "[p]rovides that a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant,

and a wrongful act by the defendant constituting a breach of that duty." *Mycogen Corp. v. Monsanto Co.*, 28 Cal.4th 888, 904 (2002). "The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action." *Id.* Put another way, "one injury gives rise to only one claim of relief." *See Lincoln Prop. Co. N.C., Inc. v. Travelers Indem. Co.* (2006) 137 Cal.App.4th 905, 912.

In interpreting the primary rights doctrine, California courts have further, explicitly stated that merely alleging that the same facts are involved in both suits is neither conclusive nor determinative of the "primary rights" analysis. *San Diego Police v. San Diego Retirement System*, 568 F. 3d 725, 734 (9th Cir. 2009). To the contrary, numerous courts in California have held that "*different* primary rights may be violated by the *same wrongful conduct*." *Id.*; *see also Agarwal v. Johnson*, 25 Cal.3d 932, 954-955 (1979) (seminal case holding that the same wrongful conduct gave rise to both independent federal statutory rights and to state law tort causes of action); *Branson v. Sun-Diamond Growers of Cal.*, 24 Cal.App.4th 327, 342 (1994) (explaining that there could be situations where separate and distinct primary rights could be invaded by one and the same wrong and distinguishing statutory rights from contractual or quasi-contractual rights). In these cases, *two causes of action* would result. *Branson, supra,* 24 Cal.App.4th at 342, citing Pomeroy, Code Remedies, § 350, p. 535.

Applying these principles to the case at bar, it is clear that Plaintiffs' present claims are not barred by their previous state court lawsuits as neither of their previous claims involved the same primary rights. Plaintiffs' present Complaint sounds in Defendants' violations of requirements placed upon them by the Real Estate Settlement Procedures Act ("RESPA") as codified in 12 U.S.C. 2605 and in Defendants' attempts to foreclose on Plaintiffs' home despite lacking standing to do so. At issue in these claims are: (1) Plaintiffs' rights under 12 U.S.C. 2605 to receive timely and responsive responses to the qualified written requests ("QWRs") they propounded on Defendants; and (2) Plaintiffs' rights to not be foreclosed upon by entities that lack standing to do so. Significantly, each of the rights invoked by Plaintiffs in their Complaint are distinct from the rights invoked in their previous state court lawsuits.

On April 7, 2015, Plaintiffs filed a complaint in Napa County Superior Court, Case No. 26-66217, seeking to exercise their right to rescind their loan under 15 U.S.C. § 1635(a). Plaintiffs also invoked various rights under the California Homeowner Bill of Rights ("HBOR"), enacted by the California Legislature, in 2013 – including their right to a single point of contact in a loan modification review, their right to receive certain documentation informing them of their right to request documents from their mortgage servicer, their right to not be dual tracked by their servicer during the pendency of a loan modification review, and their right to have their mortgage servicer document its right to foreclose. *See* Exh. F to Defendants' Request for Judicial Notice In Support of Motion to Dismiss ("Def. RJN"). None of these rights are at issue in the present case. The only right at issue which may connote a possibility of overlap is Plaintiffs' right to be free from the practice of robo-signing under California Civil Code Section 2924.17 ("Section 2924.17"). However, even with respect to this right, what was litigated in the 2015 lawsuit was the execution of a substitution of trustee that took place on April 4, 2014. In contrast, the robo-signing at issue in the present case was the Assignment of Deed of Trust purportedly executed by Defendant BANA in favor of Defendant LSF9 Mortgage Holdings, LLC, on November 6, 2014. As such, though the primary right at issue was the same, there were two distinct and separate legal wrongs – Defendants' violation of Section 2924.17 when they executed the substitution of trustee and its violation of Section 2924.17 when they executed an assignment of deed of trust. This gave rise to *two causes of action*. *See Branson, supra,* 24 Cal.App.4th at 339 (discussion situations where a single primary right could be invaded by two distinct and separate legal wrongs thereby yielding two causes of action).

Similarly, on August 24, 2015, Plaintiffs brought another state court lawsuit when, during the pendency of an active loan modification review, Defendants dual tracked their loan by continuing to proceed with foreclosure proceedings on Plaintiffs' home. *See* Def. RJN, Exh. G. These were the only facts at issue in Plaintiffs' second lawsuit and the primary right at issue was Plaintiffs' right to be free from such conduct under California Civil Code Section 2923.6 ("Section 2923.6") – the HBOR provision that prohibits dual tracking. Neither the facts nor the

primary rights at issue in that lawsuit are identical to those raised in Plaintiffs' present claims. As such, this lawsuit does not serve to bar Plaintiffs' Complaint on *res judicata* grounds either, and Defendants' arguments are in error.

Finally, even putting the primary rights analysis aside, application of the anomalous *res judicata* standards invoked by Defendants in their Motion, would nonetheless yield the same result. Defendants' own collateral estoppel standards require that the claims brought in a subsequent lawsuit be *identical* to the issues litigated in the prior proceeding. Notably, Defendants' Motion does not engage in any analysis comparing the issues in the present proceeding as opposed to the prior proceeding. This is likely because the issues in Plaintiffs' prior litigation and the current litigation are entirely disparate. Neither of Plaintiffs' lawsuits litigated the issue of Defendants' RESPA violations nor the issue of Defendants' attempts to wrongfully foreclose on Plaintiffs' home.

As such, Plaintiffs' claims are not barred by *res judicata* and Defendants' Motion should be denied.

**B. <u>Plaintiffs Have Stated Facts Sufficient to State a Claim for RESPA Violations</u>**

Plaintiffs' Complaint has stated facts sufficient to state causes of action for Defendants' violations of 12 U.S.C. § 2605 ("RESPA" or "§ 2605"). As stated in Plaintiffs' Complaint, on November 20, 2014, Plaintiffs submitted qualified written requests ("QWRs"), also known as requests for information ("RFI"), to Defendant Caliber, pursuant to RESPA and 12 C.F.R. 1024.36. Under § 2605(e), if any "servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days," and, not later than 30 days after receipt of the QWR, "provide the borrower with a written explanation or clarification that includes – (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the

borrower." 12 U.S.C. § 2605(e)(1) and (2). In pertinent part, RESPA defines a QWR as "written correspondence…that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii)… provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. (e)(1)(B).

In determining whether or not a request is a QWR that will trigger a servicer's § 2605(e)'s duty to respond, the Ninth Circuit has followed the precedent set in the Seventh Circuit decision in *Catalan v. GMAC Mortgage Corp.*, 629 F.3d 676 (7th Cir.2011), in holding that "RESPA does not require any magic language before a servicer must construe a written communication from a borrower as a qualified written request and respond accordingly." *Medrano v. Flagstar Bank, FSB,* 704 F.3d 661, 666 (9th Cir. 2012). Rather, so long as a borrower's written inquiry "(1) reasonably identifies the borrower's name and account, (2) either states the borrower's 'reasons for the belief ... that the account is in error' or 'provides sufficient detail to the servicer regarding other information sought by the borrower,' and (3) seeks 'information relating to the servicing of [the] loan,'" it triggers the servicer's obligation to respond. *Id.*

In Defendants' Motion, they notably do not deny that they provided incomplete responses to Plaintiffs' November 20, 2014 QWR. Rather, they attempt to skirt liability for their noncompliance with the express terms of § 2605(e) by claiming that certain portions of Plaintiffs' inquiry did not merit a response because they did not relate to the servicing of Plaintiffs' loan. Def. Mtn. at p. 9. Specifically, Defendants turn to the definition of "servicing" in § 2605(i) – namely, the "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan… and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). Using this definition, Defendants then read § 2605(e) to mean that a QWR only requires a response where the borrower inquiry relates only to *payments* made by the borrower. *See* Def. Mtn. at p. 9. This interpretation is disingenuous as it artificially narrows the definition of "servicing" in a way that is inconsistent with both the

framework of the statute itself and with the overall legislative purposes behind the enactment of RESPA, which was intended to be "'construed liberally' to serve the statute remedial purpose." *Medrano, supra,* 704 F.3d at 666.

To counter Defendants' myopic interpretation of "servicing" requires a look at the overall framework within which the provisions relating to QWRs and servicer obligations to respond to QWRs are couched. This leads to the observation that 12 U.S.C. 2605 is statute titled "Servicing of mortgage loans and administration of escrow account" and that it begins with a discussion of disclosures required of a servicer when there has been any "*assignment, sale, or transfer* of loan servicing." (emphasis added) In fact, the entire first third of the statute is devoted to the issue of requirements placed on servicers in the event of servicing *transfers*. *See* 12 U.S.C. § 2606(a)-(c). And, contrary to Defendants' argument that servicing relates solely to "schedul[ing] periodic payments," the issue of payments is not even mentioned until subsection (d) of the statute and then only in passing. In coming to its holding regarding servicer obligations to respond to QWRs, the *Catalan* court (upon which the Ninth Circuit's *Medrano* decision relied), similarly noted this fact. As stated by the Court: "RESPA is a consumer protection statute that regulates the real estate settlement process, including servicing of loans *and assignment of those loans*. See 12 U.S.C. § 2601 (Congressional findings)." 629 F.3d at 680 (emphasis added).

As such, Defendants' assertion that it was not required to respond to Plaintiffs' QWR relating to the MERS MIN Summary and MERS Milestones Report, is disingenuous. As is clear from the framework of the entire RESPA statute and 12 U.S.C. § 2605 in particular, transfers of loans are part and parcel of and directly related to the "servicing" of a loan. Defendants themselves acknowledge that the "MERS Summary and Milestone Reports track the transfer of ownership and servicing as it relates to the loan." Def. Mtn. at p. 9. As such, such reports related directly to the issue of servicing and Defendants were required to respond under § 2605(e).

Though Defendants also attempt to cite *Medrano* in support of its contention that it was not required to respond to Plaintiffs' inquiry, their argument fails. In *Medrano*, the borrower inquiries related to "challenges to the terms of the [original] loan and mortgage documents," and

did not therefore relate to the servicing of the loan. 704 F.3d at 667. In direct contrast, Plaintiffs' QWR inquiries related directly to the servicing transfers that occurred on their loan as would be evidenced by the MERS Summary and Milestone Reports. As such, Caliber was required to respond and their failure to do so constituted a violation of § 2605(e).

Caliber further violated RESPA by failing to provide Plaintiffs with a loan identification number that was assigned to their loan and through which the trustee would recognize Plaintiffs' loan account, and by failing to supply Plaintiffs with the contact information of an officer under the trustee's employ. § 2605(e) specifically requires a servicer to provide borrowers with "the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower." 12 U.S.C. § 2605 (e)(2)(c)(ii). Caliber's Motion also fails because it fails to specify the ways in which Plaintiffs' inquiry regarding the servicing file of their loan was overbroad or unduly burdensome. As such, its arguments fail and its motion should be denied.

### C. Plaintiffs Have Stated Facts Sufficient to State a Claim for Wrongful Foreclosure

As a preliminary matter, Plaintiff contends that a wrongful foreclosure action is not only properly brought after a foreclosure sale has already occurred. Numerous courts have evaluated wrongful foreclosure claims where it has been alleged that the foreclosing party lacks standing to foreclose as the prejudice that could result to the borrower is clear. *See Tamburri v. Sun Trust Mortgage, Inc*. (2011) 2011 WL 6294472 *14 (the threat of foreclosure by the wrong party would certainly be sufficient to constitute prejudice to the homeowner because there is no power of sale without a valid notice of default"); *see also Castillo v. Skoba*, 2010 WL 3986953 at*2 ("The power of sale in a nonjudicial foreclosure may only be exercised when a notice of default has first been recorded.... [A]ny foreclosure sale based on a void notice of default is also void."). In the same way, in *Sacchi v. Mortgage Electronic Registration Systems, Inc*. 2011 WL 2533029, the *Sacchi* Court expressed dismay when confronted with the argument that someone can seek and obtain a foreclosure sale of one's home regardless of whether that entity had any legal

authority to foreclose. *Id.* at 7.

Moreover, though Plaintiffs acknowledge that the California Supreme Court – in its seminal decision in *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919 – did not address the issue of whether or not a borrower could preempt a threatened nonjudicial foreclosure by a suit questioning the foreclosing party's right to proceed, it is also significant to note that the Court's holding did not bar such suits. Rather, the reasoning applied by *Yvanova* to grant standing to borrowers challenging the authority of a foreclosing entity to foreclose based on allegation of a void (as opposed to a voidable) assignment, are equally applicable to a pre-foreclosure lawsuit. As established by California's high Court, "the principle that only the entity currently entitled to enforce a debt may foreclose on the mortgage or deed of trust securing that debt is not, or at least should not be, controversial. It is a 'straightforward application[] of well-established commercial and real-property law: a party cannot foreclose on a mortgage unless it is the mortgagee (or its agent).'" 62 Cal.4th at 928, citing Levitin, The Paper Chase: Securitization, Foreclosure, and the Uncertainty of Mortgage Title (2013) 63 Duke L.J. 637, 640. "The borrower owes money not to the world at large but to a particular person or institution, and only the person or institution entitled to payment may enforce the debt by foreclosing on the security. It is no mere 'procedural nicety,' from a contractual point of view, to insist that only those with authority to foreclose on a borrower be permitted to do so. [citation]" *Id.* at 938. "The mortgage contract is not simply an agreement that the home may be sold upon a default on the loan. Instead, it is an agreement that if the homeowner defaults on the loan, the mortgagee may sell the property pursuant to the requisite legal procedure. [citation]" *Id.* As such, Plaintiffs maintain that those who lack standing to foreclose on their property cannot lawfully proceed with the foreclosure.

Defendants' reliance on *Gomes v. Countrywide* (2011) 192 Cal.App.4th 1149, 1155 in support of this proposition is also inapposite. Despite Defendants' reliance on the language of *Gomes*, it fails to note that the court in that very same decision recognized the legitimacy of such challenges to a foreclosing entity to foreclose where there was a "specific factual basis for

alleging that the foreclosure was not initiated by the correct party." *See Id.* at 1154 (discussing three cases that recognized the right to bring a legal challenge to the standing of a party to foreclose); *see also Herrera v. Deutsche Bank National Trust Co*. 196 Cal.App.4th 1366, 1378-1379 (2011) (denying bank summary judgment on wrongful foreclosure claim because it failed to show a chain of ownership that would establish it as the true beneficiary under the deed of trust); *Glaski v. Bank of America, N.A.*, 218 Cal.App.4th 1079, 1097 (upholding the right of a homeowner to raise questions regarding the chain of ownership by contending that defendants were not the lenders or beneficiaries and did not have the authority to foreclose); *Barrionuevo v. Chase Bank, N.A.,* 885 F.Supp.2d 964, 972 (N.D. Cal. 2012) ("[O]nly the 'true owner' or 'beneficial holder' of a Deed of Trust can bring to completion a nonjudicial foreclosure under California law…Several courts have recognized the existence of a valid cause of action for wrongful foreclosure where a party alleged not to be the true beneficiary instructs a trustee to file a Notice of Default and initiate nonjudicial foreclosure."); *Ohlendorf v. Am. Home Mortg. Servicing*, 279 F.R.D. 575, 583 (E.D. Cal. 2010) (allowing the homeowner to pursue a claim for wrongful foreclosure where the foreclosing party relied on a series of backdated transfers of a deed of trust's beneficial interest to pursue foreclosure); *Javaheri v. JP Morgan Chase Bank, N.A.*, 2011 U.S. Dist. Lexis 62152 at * 12-14 (C.D. Cal. June 2, 2011, No. CV10-08185ODW) (upholding a claim for wrongful foreclosure based on allegations that lender sold promissory note to investment pool, thereby precluding lender's successor in interest from obtaining the note when it acquired the original lender's assets).

As such, it is clear that *Gomes* was never meant to be cited for the blanket proposition that borrowers may never challenging the authority of a foreclosing entity to foreclose. Rather, where here, Plaintiffs have alleged a "specific factual basis" demonstrating the lack of Wells Fargo's authority foreclose – namely, LSF9 Master Participation Trust's status as a mere participation agent to the securitization of Plaintiffs' loan and not the full beneficiary of their deed of trust, even under *Gomes* Plaintiffs would have stated a valid claim for wrongful foreclosure.

Plaintiffs' wrongful foreclosure claim is premised on this very type of challenge and their allegations are supported by a clear and specific factual basis. Plaintiffs are not embarking on a mere fishing expedition to discover *if* there are any grounds upon which to challenge the authority of Defendants to foreclose. Rather, Plaintiffs are alleging that Defendants *do not* have the authority to foreclose because LSFP Master Participation Trust is not the owner of beneficial interest in Plaintiff's mortgage.

Finally, Plaintiffs' wrongful foreclosure claim is not barred by the tender requirement. This argument fails because California courts have clearly established that tender is not required where the foreclosure sale would be void and not merely voidable. *See Dimock v. Emerald Properties, Inc.* (2008) 81 Cal.App.4th 868; *Lona v. Citibank, N.A.* (2011) 202 Cal. App. 4th 89; *Tamburri v. Suntrust Mortgage, Inc.* (N.D. Cal. 2011) 2011 WL 6294472, *4 ("where a sale is void, rather than simply voidable, tender is not required"). Plaintiffs' complaint alleges facts suggesting that the 2014 assignment on which Defendants premised their foreclosure was void and not merely voidable because the receiving entity did not own the beneficial interest in Plaintiffs' loan but was merely a participation agent in the transaction.

As such, Defendants' arguments are inapposite and their Motion should be denied.

**D. <u>Plaintiffs Have Stated Facts Sufficient to State a Cause of Action for Violations of California Civil Code § 2924.17</u>**

As with Defendant's arguments with respect to Plaintiff's wrongful foreclosure claim, Defendants move to dismiss Plaintiff's claim for violation of California Civil Code Section 2924.17 ("Section 2924.17") on the grounds that Plaintiffs lack standing to bring such a challenge. Such an argument is based on Defendants' misunderstanding of the HBOR provisions and their misguided conflation of Plaintiffs' wrongful foreclosure claim with Plaintiffs' claims of Defendants' Section 2924.17 violations. Section 2924.17 has nothing to do with contesting a beneficiary's right to foreclose. Rather, it was enacted to address the issue of robo-signing, a rampant unscrupulous practice where by lenders and servicers employed the use of individuals to

execute recorded documents despite lacking the knowledge and competency to do so.

To allege a Section 2924.17 violation, the only standing that is required is that the plaintiff be a borrower to whom the HBOR provisions apply. Plaintiffs fall within the protections of the HBOR and, as such, no more is required to demonstrate standing to bring a claim under Section 2924.17.

As such, Defendants' Motion should be denied.

## V. **CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss Plaintiff's Complaint in its entirety or grant leave to amend if the Motion to Dismiss is granted.

DATED: April 12, 2017

Respectfully submitted,

/s/ Clarisse Chung
Clarisse Chung
Crossroads Legal Group
Michael Yesk
Yesk Law
Attorneys for Plaintiffs