Clarisse Chung (SB#260894)
Crossroads Legal Group
800 W. El Camino Real Ste 180
Mountain View, CA 94040
(650) 332-4905
clarisse@crossroadslegalgroup.com
Attorneys for Plaintiff

Michael Yesk (SB#130056)
Yesk Law
70 Doray Drive, Suite 16
Pleasant Hill, CA 94523
(925) 849-5525
yesklaw@gmail.com
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE B. NOBLE AND PATRICIA L. NOBLE,<br><br>    Plaintiff,<br><br>v.<br><br>CALIBER HOME LOANS, INC.; U.S. BANK TRUST, N.A. AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST; LSF9 MORTGAGE HOLDINGS, LLC; CLEAR RECON CORP.; BANK OF AMERICA, N.A.; and DOES 1-10, INCLUSIVE,<br><br>    Defendants | Case No. 4:17-cv-01053-CW<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A.'S MOTION TO DISMISS COMPLAINT**<br><br>Hearing: June 13, 2017<br>Time:  2:30 p.m.<br>Place:  Courtroom 2 – 17th Floor<br><br>Hon. Claudia Wilken |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs GEORGE B. NOBLE AND PATRICIA L. NOBLE ("Plaintiffs") hereby submits this opposition to Defendants BANK OF AMERICA, N.A.'s ("BANA" or "Defendant") Motion to Dismiss Plaintiff's Complaint ("Motion"). Plaintiffs maintain that they have stated valid claims for wrongful foreclosure, violations of the California Homeowner Bill of Rights ("HBOR"), and violations of the Real Estate Settlement Procedures Act ("RESPA") by Defendants. Plaintiffs' Complaint alleges multiple, specific factual bases indicating that Defendant violated RESPA provisions requiring them to respond to Plaintiffs' requests for information as well as HBOR provisions requiring the recordation of foreclosure documents that are accurate, reliable and supported by competent evidence. As such, Defendants' Motion should be denied.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs' Complaint ("Complaint") arises out of Defendants' violations of provisions of the Real Estate Settlement Procedures Act ("RESPA") and the wrongful actions taken by Defendants in their attempts to foreclose upon real property purchased by Plaintiffs. On or around 2007, Plaintiffs took out a loan with the now-defunct Countrywide Home Loans, Inc. ("Countrywide") secured by real property located at 56 Hennessey Ridge Road, St. Helena, California 94574 ("Subject Property").

On or around November 22, 2011, Mortgage Electronic Registration Systems, Inc. ("MERS") recorded a Corporation Assignment of Deed of Trust, assigning all beneficial interest in Plaintiffs' DOT together with the note to Defendant Bank of America, N.A. ("BANA" or "Defendant"). On or around November 6, 2014, Michael D. Fitts as a purported "Assistant Vice President" of BANA executed an Assignment of Deed of Trust in which BANA purported to assign all beneficial interest in Plaintiffs' DOT to LSF9 Mortgage Holdings, LLC. Though "Bank of America, N.A." was printed on the signature line of the Assignment of Deed of Trust, "Michael D. Fitts" and "Assistant Vice President" were handwritten on the document.

On November 7, 2014, Plaintiffs sent BANA a qualified written request for information under 12 U.S.C. 2605(e) and 12 C.F.R. 1024.36. Among other things, Plaintiffs sought information relating to the identity of the owner of their mortgage; the transfer history of their loan; and their servicing file. BANA's response to Plaintiffs' request for information ("RFI") contained numerous deficiencies, including but not limited to the following: BANA failed to supply Plaintiffs with the name, address and telephone number of the trustee overseeing the issuing entity; BANA failed to supply Plaintiffs with the name, address, telephone number, and position of an officer under the trustee's employ; and BANA did not provide Plaintiffs with a loan identification number that was assigned to their loan and through which the trustee would recognize Plaintiffs' loan account.

BANA also refused to supply information relating to the transfer history of Plaintiffs' loan by failing to respond to Plaintiffs' request for the MERS MIN Summary and a MERS Milestones Report. This is despite the fact that Plaintiffs informed BANA in its RFI that Plaintiffs were unable to find their loan on the MERS system using the MIN number listed on their Deed of Trust.[1] BANA's response to Plaintiffs' request for information regarding their servicing file was also incomplete. Among other things, BANA refused to send a servicing file that reflected the most recent data and sent outdated servicing notes that did not even reflect the fact that Plaintiffs had engaged BANA for loss mitigation review. Some information and documents provided only covered activity on Plaintiffs' account up to January 1, 2014.

On or around November 6, 2014, BANA also recorded an assignment of Plaintiffs' deed of trust, purporting to transfer all beneficial interest to the LSF9 Master Participation Trust. This assignment was executed by Michael D. Fitts, who purported to be an "Assistant Vice President" of BANA when, in fact, he is listed as a Foreclosure Specialist on his online LinkedIn profile page. Plaintiffs allege on information and belief that the LSF9 Master Participation Trust was

---

[1] Though Plaintiffs were able to find what appeared to be their Deed of Trust on the MERS system by performing a searching using George Noble's social security number and property zip code, the record number associated with that MIN was *not* the MIN listed on Plaintiffs' Deed of Trust.

merely a participation agent to the securitization of Plaintiffs' loan. As such and based on an investigation Plaintiffs had conducted on the ownership of their loan, Plaintiffs further allege that the LSF9 Master Participation Trust is not the beneficiary of Plaintiffs' deed of trust because it does not own the entirety of Plaintiffs' loan but rather only a forward interest in its servicing rights. Notwithstanding this fact, the LSF9 Master Participation Trust has been attempting to foreclose on the Subject Property. On or around, February 10, 2017, Plaintiffs received a notice of trustee's sale.

### III. <u>STANDARD OF REVIEW</u>

Under Federal Rule of Civil Procedure 12(b)(6), a Motion to Dismiss tests the ability of a complaint to allege facts sufficient to state a plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). A complaint that contains sufficient factual allegations "to raise a right to relief above the speculative level" will survive a motion to dismiss. *Id*. A complaint must state a claim that is facially plausible, requiring facts showing more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 U.S. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In evaluating whether a complaint meets this standard, the court is not required to assume the truth of Plaintiff's legal conclusions but must take Plaintiff's factual allegations as true, and then "determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950.

### IV. <u>DISCUSSION</u>

#### A. <u>Plaintiffs' Claims Are Not Barred by Res Judicata</u>

Contrary to Defendant's assertion in its Motion, Plaintiffs' claims are not barred by *res judicata*. First, Defendants do not even apply the correct standard to determine if Plaintiffs' claims are barred, choosing to adopt some hybrid of a twenty-year-old California *res judicata* standard and the currently prevailing "primary rights" doctrine. Moreover, when discussing the "primary rights" analysis within the context of the "identity of claims" prong of the old estoppel standard, Defendant errs in both its analysis and its conclusion. Finally, even under the terms of

the standard referenced by Defendant, it is clear that Plaintiffs are not estopped from bringing their current claims.

To determine the preclusive effect of a state court judgment federal courts look to state law. *Palomar Mobilehome Park Ass'n v. City of San Marcos*, 989 F.2d 362, 364 (9th Cir.1993). "California's res judicata doctrine is based on a primary rights theory." *Manufactured Home Communities, Inc. v. City of San Jose,* 420 F.3d 1022, 1032 (9th Cir. 2005). As explained by the California Supreme Court, the primary rights theory "[p]rovides that a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty." *Mycogen Corp. v. Monsanto Co.*, 28 Cal.4th 888, 904 (2002). "The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action." *Id.* Put another way, "one injury gives rise to only one claim of relief." See *Lincoln Prop. Co. N.C., Inc. v. Travelers Indem. Co.* (2006) 137 Cal.App.4th 905, 912.

In interpreting the primary rights doctrine, California courts have further, explicitly stated that merely alleging that the same facts are involved in both suits is neither conclusive nor determinative of the "primary rights" analysis. *San Diego Police v. San Diego Retirement System*, 568 F. 3d 725, 734 (9th Cir. 2009). To the contrary, "*different* primary rights may be violated by the *same wrongful conduct*." *Id.*; see also *Agarwal v. Johnson*, 25 Cal.3d 932, 954-955 (1979) (seminal California Supreme Court case holding that the same wrongful conduct gave rise to both independent federal statutory rights and to state law tort causes of action); *Branson v. Sun-Diamond Growers of Cal.*, 24 Cal.App.4th 327, 342 (1994) (explaining that there could be situations where separate and distinct primary rights could be invaded by one and the same wrong and distinguishing statutory rights from contractual or quasi-contractual rights). In these cases, *two causes of action* would result. *Branson, supra,* 24 Cal.App.4th at 342, citing Pomeroy, Code Remedies, § 350, p. 535.

Applying these principles to the case at bar, it is clear that Plaintiffs' present claims are not barred by their previous state court lawsuits as neither of their previous claims involved the

PLAINTIFF'S OPPOSITION TO DEFENDANT BANA'S MOTION TO DISMISS - 5
4:17-cv-01053-CW

same primary rights. Plaintiffs' present Complaint sounds in Defendants' violations of requirements placed upon them by the Real Estate Settlement Procedures Act ("RESPA") as codified in 12 U.S.C. 2605 and in Defendants' attempts to foreclose on Plaintiffs' home despite lacking standing to do so. At issue in these claims are: (1) Plaintiffs' rights under 12 U.S.C. 2605 to receive timely and responsive responses to the qualified written requests ("QWRs") they propounded on Defendants; and (2) Plaintiffs' rights to not be foreclosed upon by entities that lack standing to do so. Significantly, each of the rights invoked by Plaintiffs in their Complaint are distinct from the rights invoked in their previous state court lawsuits.

On April 7, 2015, Plaintiffs filed a complaint in Napa County Superior Court, Case No. 26-66217, seeking to exercise their right to rescind their loan under 15 U.S.C. § 1635(a). Plaintiffs also invoked various rights under the California Homeowner Bill of Rights ("HBOR"), enacted by the California Legislature, in 2013 – including their right to a single point of contact in a loan modification review, their right to receive certain documentation informing them of their right to request documents from their mortgage servicer, their right to not be dual tracked by their servicer during the pendency of a loan modification review, and their right to have their mortgage servicer document its right to foreclose. *See* Exh. E to Defendants' Request for Judicial Notice In Support of Motion to Dismiss ("Def. RJN"). None of these rights are at issue in the present case. The only right at issue which may connote a possibility of overlap is Plaintiffs' right to be free from the practice of robo-signing under California Civil Code Section 2924.17 ("Section 2924.17"). However, even with respect to this right, what was litigated in the 2015 lawsuit was the execution of a substitution of trustee that took place on April 4, 2014. In contrast, the robo-signing at issue in the present case was the Assignment of Deed of Trust purportedly executed by Defendant BANA in favor of Defendant LSF9 Mortgage Holdings, LLC, on November 6, 2014. As such, though the primary right at issue was the same, there were two distinct and separate legal wrongs – Defendants' violation of Section 2924.17 when they executed the substitution of trustee and its violation of Section 2924.17 when they executed an assignment of deed of trust. This gave rise to *two causes of action*. *See Branson, supra,* 24

Cal.App.4th at 339 (discussing situations where a single primary right could be invaded by two distinct and separate legal wrongs thereby yielding two causes of action).

Similarly, on August 24, 2015, Plaintiffs brought another state court lawsuit when, during the pendency of an active loan modification review, Defendants dual tracked their loan by continuing to proceed with foreclosure proceedings on Plaintiffs' home. *See* Def. RJN, Exh. G. These were the only facts at issue in Plaintiffs' second lawsuit and the primary right at issue was Plaintiffs' right to be free from such conduct under California Civil Code Section 2923.6 ("Section 2923.6") – the HBOR provision that prohibits dual tracking. Neither the facts nor the primary rights at issue in that lawsuit are identical to those raised in Plaintiffs' present claims. As such, this lawsuit does not serve to bar Plaintiffs' Complaint on *res judicata* grounds either.

Finally, even putting the primary rights analysis aside, application of Defendant's hybrid old-*res judicata* standard and primary rights analysis, would nonetheless yield the same result. Defendant's *res judicata* standard requires that the claims brought in a subsequent lawsuit be *identical* to the claims litigated in the prior proceeding. Employing the "primary rights" analysis under this prong, Defendant argues that because the prior actions involved the "same Loan secured by the same Property," there was an identity of claims between those lawsuits and the present one. Defendant's analysis utterly fails to engage in any discussion of the rights at issue in the present matter as compared to the previous actions and its eagle's eye view of the "same Loan secured by the same Property" is likely made in view of Defendant's knowledge that its *res judicata* argument would fail under a proper "primary rights" analysis. The mere fact that Plaintiffs' claims relate in some broad way to Plaintiffs' property on which Plaintiffs took out a loan, is completely insufficient to establish that the claims litigated in the prior actions involved the same rights at issue here. When looking at the rights that were litigated, it is clear that neither of Plaintiffs' prior lawsuits litigated the issue of Defendants' RESPA violations nor the issue of Defendants' attempts to wrongfully foreclose on Plaintiffs' home.

As such, Plaintiffs' claims are not barred by *res judicata* and Defendants' Motion should be denied.

**B.   Plaintiffs Have Stated Facts Sufficient to State a Claim for RESPA Violations**

Plaintiffs' Complaint has stated facts sufficient to state causes of action for Defendant's violations of 12 U.S.C. § 2605 ("RESPA" or "§ 2605"). As stated in Plaintiffs' Complaint, on November 7, 2014, Plaintiffs submitted qualified written requests ("QWRs"), also known as requests for information ("RFI"), to Defendant BANA, pursuant to RESPA and 12 C.F.R. 1024.36. Under § 2605(e), if any "servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days," and, not later than 30 days after receipt of the QWR, "provide the borrower with a written explanation or clarification that includes – (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower." 12 U.S.C. § 2605(e)(1) and (2). In pertinent part, RESPA defines a QWR as "written correspondence…that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii)… provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. (e)(1)(B).

In determining whether or not a request is a QWR that will trigger a servicer's §2605(e)'s duty to respond, the Ninth Circuit has followed the precedent set in the Seventh Circuit decision in *Catalan v. GMAC Mortgage Corp.*, 629 F.3d 676 (7th Cir.2011), in holding that "RESPA does not require any magic language before a servicer must construe a written communication from a borrower as a qualified written request and respond accordingly." *Medrano v. Flagstar Bank, FSB,* 704 F.3d 661, 666 (9th Cir. 2012). Rather, so long as a borrower's written inquiry "(1) reasonably identifies the borrower's name and account, (2) either states the borrower's 'reasons for the belief ... that the account is in error' or 'provides sufficient detail to the servicer regarding other information sought by the borrower,' and (3) seeks 'information relating to the servicing of [the] loan,'" it triggers the servicer's obligation to respond. *Id.*

Plaintiffs' QWR identified the borrower's name and account, provided sufficient detail to BANA regarding the information Plaintiffs were seeking and also sought information related to the servicing of the loan, including information related to the transfer history of Plaintiffs' loan and Plaintiffs' servicing file. As such, Plaintiffs' request clearly met the requirements for a QWR as set forth by the Ninth Circuit in *Medrano, supra.* Defendants' Motion notably does not deny that it provided incomplete responses to Plaintiffs' November 7, 2014 QWR. Rather, Defendant's entire argument hinges on the form of Plaintiffs' request. As such, Defendant's argument fails and its Motion should be denied.

Defendant also errs in its contention that there is no private right of action under RESPA and that Plaintiffs did not establish pecuniary damages as a result of Defendant's RESPA violation. Contrary to Defendant's argument, under 12 U.S.C. § 2605(f), Congress <u>clearly</u> established a private right of action under the RESPA statute, stating: "Whoever fails to comply with any provision of this section shall be liable to the borrower for… (A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C. 2605(f)(1)(A)-(B). Such language clearly establishes a private right of action for borrowers for servicer violations under the provision of this statute.

Plaintiffs also suffered damages in the form of payments made to parties who are not true owners of Plaintiffs' mortgage. As alleged in Plaintiffs' Complaint, the LSF9 Master Participation Trust (the purported transferee of Plaintiffs' loan) was merely a participation agent to the securitization of Plaintiffs' loan. As such and based on an investigation Plaintiffs had conducted on the ownership of their loan, Plaintiffs further allege that the LSF9 Master Participation Trust is not the beneficiary of Plaintiffs' deed of trust because it does not own the entirety of Plaintiffs' loan but rather only a forward interest in its servicing rights. To the extent Plaintiffs made payments to the LSF9 Master Participation Trust despite the trust's lack of true ownership of Plaintiffs' loan, Plaintiffs suffered pecuniary damages in making payments to an entity not entitled to receive payments. Such damages would not have been suffered had BANA

properly provided the transfer history of Plaintiffs' loan to Plaintiffs in response to their valid QWR request.

Defendant's arguments to the contrary are in error and its Motion should be denied.

C. **Plaintiffs Have Stated Facts Sufficient to State a Cause of Action for Violations of California Civil Code § 2924.17**

As with Defendant's arguments with respect to Plaintiff's wrongful foreclosure claim, Defendants move to dismiss Plaintiff's claim for violation of California Civil Code Section 2924.17 ("Section 2924.17") on the grounds that Plaintiffs did not allege their property had been sold in foreclosure and also did not contest that they defaulted on their loan.

Each of these facts are completely irrelevant to the issue of whether or not Plaintiffs stated a sufficient claim under Section 2924.17, which does not require, in any way, shape or form that Plaintiffs make the type of allegations Defendants are purporting are required. Under Section 2924.17, it is sufficient for Plaintiffs to merely allege that a document recorded in "connection with a foreclosure… be accurate and complete and supported by competent and reliable evidence." Cal. Civ. Code § 2924.17(a). Plaintiffs more than met this requirement when they alleged in their Complaint that BANA executed and recorded an assignment of deed of trust on November 6, 2014, in which an alleged "Assistant Vice President" of BANA (Michael D. Fitts) – who was actually a Foreclosure Specialist – purported to assign all beneficial interest in Plaintiffs' Deed of Trust to LSF9 Mortgage Holdings, LLC. Complaint, ¶ 44. This is despite the fact that an investigation Plaintiffs had conducted on the ownership of their loan later revealed that the LSF9 Master Participation Trust is not the beneficiary of Plaintiffs' deed of trust because it does not own the entirety of Plaintiffs' loan but rather only a forward interest in its servicing rights. Complaint, ¶ 26.

As such, BANA violated Section 2924.17 when it recorded an assignment of deed of trust stating that LSF9 Master Participation Trust was the new owner of all beneficial interest in Plaintiffs' deed of trust. BANA does not present any argument stating otherwise and its Motion

should therefore be denied.

V. **CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss Plaintiff's Complaint in its entirety or grant leave to amend if the Motion to Dismiss is granted.

DATED: May 12, 2017                    Respectfully submitted,


                                       /s/ Clarisse Chung
                                       Clarisse Chung
                                       Crossroads Legal Group
                                       Michael Yesk
                                       Yesk Law
                                       Attorneys for Plaintiffs