1  MCGUIREWOODS LLP
   DELEYLA A. LAWRENCE SBN #284562
2  1800 Century Park East, 8th Floor
   Los Angeles, CA 90067-1501
3  Telephone: 310.315.8200
   Facsimile: 310.315.8210
4
   Attorneys for Defendant Bank of America, N.A.
5

6

7                    UNITED STATES DISTRICT COURT

8                    NORTHERN DISTRICT OF CALIFORNIA

9

10 GEORGE B. NOBLE AND PATRICIA          CASE NO. 4:17-CV-01053
   L. NOBLE,
11
            Plaintiffs,                  **REQUEST FOR JUDICIAL
12                                       NOTICE IN SUPPORT OF
       vs.                               DEFENDANT'S MOTION TO
13                                       DISMISS PLAINTIFFS' FIRST
   CALIBER HOME LOANS, INC.; U.S.        AMENDED COMPLAINT
14 BANK TRUST, N.A. AS TRUSTEE           PURSUANT TO FEDERAL RULE
   FOR LSF9 MASTER                       OF CIVIL PROCEDURE 12(b)(6)**
15 PARTICIPATION TRUST; LSF9
   MORTGAGE HOLDINGS, LLC;               Date:   October 3, 2017
16 CLEAR RECON CORP.; BANK OF            Time:   2:30 p.m.
   AMERICA, N.A.; and DOES 1-10,         Crtrm.: 2
17 INCLUSIVE,

18          Defendants.

19

20

21

22

23

24

25

26

27

28

                                   1
─────────────────────────────────────────────
              REQUEST FOR JUDICIAL NOTICE

Pursuant to Rule 201(b) and Rule 201(d) of the Federal Rules of Evidence, Defendant Bank of America, N.A. respectfully request that the Court take judicial notice of the records more particularly described below:

1. Deed of Trust, dated June 20, 2007, recorded in the Official Records of Napa County Recorder's Office on June 29, 2007 as Document No. 2007-0021964; a true and correct copy is attached as **Exhibit A**.

2. Complaint, dated August 24, 2015, in the case entitled *George B. Noble, et al. vs. Caliber Home Loans, Inc., et al.,* in the Superior Court of the State of California, County of Napa, case number 26-67149; a true and correct copy is attached as **Exhibit B**.

3. First Amended Complaint, dated December 11, 2015, in the case entitled *George B. Noble, et al. vs. Caliber Home Loans, Inc., et al.,* in the Superior Court of the State of California, County of Napa, case number 26-67149; a true and correct copy is attached as **Exhibit C**.

4. Notice of Ruling, dated May 19, 2016, in the case entitled *George B. Noble, et al. vs. Caliber Home Loans, Inc., et al.,* in the Superior Court of the State of California, County of Napa, case number 26-67149; a true and correct copy is attached as **Exhibit D**.

5. Order Dismissing Action, dated July 14, 2016, in the case entitled *George B. Noble, et al. vs. Caliber Home Loans, Inc., et al.,* in the Superior Court of the State of California, County of Napa, case number 26-67149; a true and correct copy is attached as **Exhibit E**.

6. Order Denying Plaintiffs' Motion to Set Aside Dismissal, dated February 7, 2017, in the case entitled *George B. Noble, et al. vs. Caliber Home Loans, Inc., et al.,* in the Superior Court of the State of California, County of Napa, case number 26-67149; a true and correct copy is attached as **Exhibit F**.

Federal Rule of Evidence 201 permits the Court to take judicial notice of adjudicative facts, which are "either (1) generally known within the territorial

jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. Rule Evid. 201(b). Notably, the Court may take judicial notice of the facts that are a matter of public record. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (overruled in part on other grounds by *Astoria Federal Savings and Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)); *W. Fed. Savings and Loan Ass'n v. Heflin Corp.*, 797 F. Supp. 790, 792 (N.D. Cal. 1992) (taking judicial notice of documents in a county's public record, including deeds of trust). Moreover, the Court may take judicial notice of court filings and other matters of public record. *See Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1260, 1364 (9th Cir. 1998)

The Court may take judicial notice of the documents referenced herein because they are matters of public record and court filings.

DATED: August 30, 2017          MCGUIREWOODS LLP


By: */s/ Deleyla A. Lawrence*
     Deleyla A. Lawrence
     Attorneys for Defendant Bank of America, N.A.

# EXHIBIT A

**RECORDING REQUESTED BY**
Napa Land Title Company

Recording Requested By:
J. O'NEILL

| | | |
|---|---|---|
| Recorded | REC FEE | 88.00 |
| Official Records | | |
| County of | | |
| Napa | | |
| JOHN TUTEUR | | |
| Assessor-Recorder-Cou | | |
| | LS | |
| 12:10PM 29-Jun-2007 | Page 1 of 28 | |

2007-0021964

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
MARIA AGUILAR

025-280-059

[Space Above This Line For Recording Data]

77430022-TT
[Escrow/Closing #]

00016971110906007
[Doc ID #]

# DEED OF TRUST

MIN 1001337-0002225169-1

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   JUNE 20, 2007          , together with all Riders to this document.

(B) "Borrower" is

GEORGE B NOBLE, AND PATRICIA L NOBLE, HUSBAND AND WIFE AS COMMUNITY PROPERTY

**CALIFORNIA**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**

Page 1 of 16

-6A(CA) (0207)    CHL (08/05)(d)    VMP Mortgage Solutions, Inc. (800)521-7291            **Form 3005  1/01**
CONV/VA





Borrower's address is

56 HENNESSEY RIDGE RD, SAINT HELENA, CA 94574-9517

Borrower is the trustor under this Security Instrument.

(C) "Lender" is

COUNTRYWIDE HOME LOANS, INC.

Lender is a CORPORATION

organized and existing under the laws of NEW YORK

Lender's address is

4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613

(D) "Trustee" is

RECONTRUST COMPANY, N.A.

225 W HILLCREST DRIVE, MSN; TO-02, THOUSAND OAKS, CA 91360

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated  JUNE 20, 2007         , The Note states that Borrower owes Lender

THREE MILLION SEVEN HUNDRED FIFTY THOUSAND and 00/100

Dollars (U.S. $ 3,750,000.00     ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   JULY 01, 2037

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of NAPA

[Type of Recording Jurisdiction]     [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 025-280-059     which currently has the address of

56 HENNESSEY RIDGE RD, SAINT HELENA

[Street/City]

California 94574-9517 ("Property Address"):

[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
GEORGE B. NOBLE                        -Borrower

_____ (Seal)
PATRICIA L. NOBLE                       -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

State of California
County of _Napa_  } ss.

On _6·25·07_ before me, _TRACY A. TInsley_ _Notary Public_ personally appeared

_George B. Noble and Patricia L. Noble_

_____, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

TRACY A. TINSLEY
COMM. # 1656755
NOTARY PUBLIC-CALIFORNIA
NAPA COUNTY
COMM. EXP. APRIL 2, 2009

_Tracy A. Tinsley_ (Seal)

# PAYMENT ADVANTAGE
# FIXED/ADJUSTABLE RATE RIDER
### (LIBOR One Year Index - Rate Caps)

77430022-TT                    00016971110906007
[Escrow/Closing #]              [Doc ID #]

THIS FIXED/ADJUSTABLE RATE RIDER is made this TWENTIETH day of JUNE, 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Payment Advantage Fixed/Adjustable Rate Note (the "Note") to

COUNTRYWIDE HOME LOANS, INC.

("Lender") of the same date and covering the property described in the Security Instrument and located at:

56 HENNESSEY RIDGE RD
SAINT HELENA, CA 94574-9517
[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT THE ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME. FOR A LIMITED TIME THERE WILL BE A PAYMENT OPTION THAT IS LESS THAN THE FULL AMOUNT OF INTEREST DUE. IF THIS PAYMENT OPTION IS CHOSEN, THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED.**

**THE NOTE CONTAINS A PREPAYMENT PENALTY.**

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST AND PAYMENTS**
The Note provides for changes in the interest rate and the monthly payments, as follows:





## 2. INTEREST

### (A) Fixed Interest Rate

Interest will be charged on unpaid Principal until the full amount has been paid. Interest will initially accrue at a yearly rate of 7.125 %. This is my initial fixed interest rate and is the rate for determining the interest I owe until it changes as provided below. Interest will be charged on the basis of a twelve-month year and a thirty-day month.

### (B) Adjustable Interest Rate

The initial fixed interest rate I owe will change to an adjustable interest rate on the first day of JULY, 2012 and the adjustable interest rate will change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

### (C) Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (D) Calculation of Adjustable Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new adjustable interest rate by adding 2.250 % (this amount is the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new adjustable interest rate until the next Interest Rate Change Date. My adjustable interest rate will never be greater than 12.125 % or lower than the Margin.

### (E) Limits on Interest Rate Changes

The interest rate in effect at the first Interest Rate Change Date will not be greater than 12.125 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Interest Rate Change Date by more than 2 percentage points from the rate of interest in effect for the preceding 12 months.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month.

I will make my monthly payments on the FIRST day of each month beginning on AUGUST 01, 2007 . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If I still owe amounts under this Note on JULY 01, 2037 , I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at

P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

**(B) Minimum Payment**

The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment. The Minimum Payment is calculated three (3) different ways during the loan term:

(i) Until JULY 01, 2017 ("Recast Date") or until the Maximum Negative Amortization Cap is reached, whichever is earlier, the Minimum Payment will be calculated using the then-current interest rate (either fixed or adjustable as described in Section 2) minus 5.000 percentage points. The result of this calculation is called the "Minimum Payment Rate." The Minimum Payment Rate can never be lower than 1%. Since the Minimum Payment Rate is less than the interest rate applied to my unpaid Principal balance, the Minimum Payment will be insufficient to pay the interest portion of the monthly payment and no portion is applied to Principal. When I make a **Minimum Payment, which is based on the Minimum Payment Rate that is less than the rate of interest due, the unpaid interest is added to the Principal amount. This is known as "deferred interest" or "negative amortization."**

(ii) If the unpaid Principal balance reaches the Maximum Negative Amortization Cap prior to the Recast Date, my new Minimum Payment will be the amount that would pay only the interest portion of the monthly payment based upon the then-current interest rate, which changes in accordance with Section 2. This is the Minimum Payment in effect until the Recast Date.

(iii) After the Recast Date and for the remainder of the loan term, the Minimum Payment will be the monthly payment amount necessary to pay the loan off, in full, at the Maturity Date in substantially equal payments based on the then-current interest rate, which changes in accordance with Section 2.

**(C) Initial Monthly Minimum Payment**

Each of my initial monthly Minimum Payments until the first Interest Rate Change Date will be in the amount of U.S. $ 14,096.31 .

**(D) Monthly Payment Changes**

Changes in my monthly payment will be the result of changes in the unpaid Principal balance of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Sections 2 and 3 of this Note.

**(E)  Additions to My Unpaid Principal**

For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest due and will add the difference to my unpaid Principal. Interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest due, the Note Holder will apply the payment as provided in Section 3(A).

**(F)  Payment Options**

Until the Recast Date, the Note Holder may provide me with up to three (3) additional monthly payment options ("Payment Options") if they are greater than the Minimum Payment. The Payment Options are calculated using the interest rate in accordance with Section 2. The following Payment Options may be provided:

(i)  **Interest Only Payment:** the amount that would pay only the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii)  **Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments based on the then-current interest rate.

(iii)  **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments at the then-current interest rate.

These Payment Options are only available if they are greater than the Minimum Payment. If the Maximum Negative Amortization Cap is reached, then the Payment Options available will be the Amortized Payment and the 15 Year Amortized Payment. Upon the Recast Date I will no longer have Payment Options and I will be required to pay the Amortized Payment, which becomes the Minimum Payment as described in Section 3(B)(iii).

**B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

(A)  Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 2 above, Paragraph 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by

this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 2 above, Paragraph 18 of the Security Instrument described in Section 12(A) above shall then cease to be in effect, and Paragraph 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender. To the extent permitted by Applicable Law, Lender may charge reasonable fees as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this

Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Payment Advantage Fixed/Adjustable Rate Rider.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____        -Borrower
GEORGE B NOBLE

_____        -Borrower
PATRICIA L. NOBLE

_____        -Borrower

_____        -Borrower

Prepared by: MARIA AGUILAR

**COUNTRYWIDE HOME LOANS, INC.**

Branch #: 0001258
136 WEST NAPA STREET
SONOMA, CA 95476
Phone: (707)939-4740
Br Fax No.: (707)939-9570

DATE: 06/20/2007
CASE #:
DOC ID #: 00016971110906007
BORROWER: GEORGE B. NOBLE
PROPERTY ADDRESS: 56 HENNESSEY RIDGE RD
SAINT HELENA, CA 94574-9517

## LEGAL DESCRIPTION EXHIBIT A

FHA/VA/CONV
• Legal Description Exhibit A
1C404-XX (04/03)(d)



* 2 3 9 9 1 *

* 1 6 9 7 1 1 1 0 9 0 0 0 0 0 1 0 0 6 A *

# Exhibit "A"

All that certain real property situated in the County of Napa, State of California, described as follows:

PARCEL ONE:
Commencing at a brass pin stamped LS 4510 at the northeast corner of the 123.38 acre parcel of land as shown on Sheet 2 of Map 4675 entitled, "Record of Survey of the Lands of Barancik Associates Land & Cattle Company", filed August 26, 1993 in Book 29 of Surveys at pages 33-36 in the office of the County Recorder of said Napa County, said brass pin being the northeast corner of the northwest quarter of the northeast quarter of Section 32, Township 8 North, Range 4 West, Mount Diablo Base and Meridian; thence along the north line of said 123.38 acre parcel, being the north line of said Section 32, South 88° 13' 00" West 1276.21 feet to a brass pin stamped LS 4510 at the northeasterly corner of said parcel, said corner also being the quarter corner of Sections 29 and 32 of said Township and Range and being an angle point in the easterly boundary of the 117.36 acre parcel as shown on said map; thence along the easterly line of said 117.36 acre parcel North 7°38' 13" West 400.29 feet to the TRUE POINT OF BEGINNING; thence continuing North 7°38' 13" West 1057.08 feet to a brass pin LS 4510 at the Northeast corner of the Southeast quarter of the Southwest quarter of said Section 29; thence along the following courses and distances: South 45° 26' 12" West 2447.63 feet to a rebar and cap LS 4510, North 89° 14' 46" West 1496.90 feet to a rebar and cap LS 4510, South 65° 53' 46" West 927.77 feet to a rebar and cap LS 4510, South 43° 03' 42" East 305.56 feet to a rebar and cap LS 4510, South 32° 46' 58" East 158.30 feet to a rebar and cap LS 4510, South 40° 57' 13" East 58.95 feet to a rebar and cap LS 4510, South 37° II' 57" East 95.78 feet to a rebar and cap LS 4510, South 8° 00' 45" East 110.70 feet to a rebar and cap LS 4510, South 14° 38' 26" East 88.32 feet to a rebar and cap LS 4510, and North 88° 15' 06" East 2185.05 feet to a rebar and cap LS 4510 at the northwesterly corner of said 123.38 acre parcel; thence along westerly line of said 123.38 acre parcel South 20°38'02" West 476.15 feet; thence East 1060.15 feet; thence North 472.74 feet to a rebar and cap stamped LS 4510 on the northwesterly line of said 123.38 acre parcel; thence along said northwesterly line North 32°39'52" East 918.09 feet; thence leaving said northwesterly line North 32°40'00" West 1040.00 feet; thence North 57°20'00" East 200.00 feet; thence South 76°30' 00" East 638.06 feet to the true point of beginning.

PARCEL TWO:
A non-exclusive Easement, 40 feet in width, for ingress, egress and roadway and secondary access purposes, the centerline of which is described as follows:

COMMENCING at the Northeast corner of the Northwest quarter of the Southeast quarter of Section 31, Township 8 North, Range 4 West, Mount Diablo Base and Meridian, as the same is shown on Map No. 4520, filed October 16, 1991 in Book 28 of Surveys at pages 29-39, in the office of the County Recorder of said Napa

## EXHIBIT "A" Continued

County; thence along the North line of said Northwest quarter, North 89° 58' 38" West 190.41 feet to the center of an existing road; thence following the center of said road the following tangent courses and curves: North 4° 28' 35" West 8.75 feet along a curve to the right having a radius of 200.00 feet through a central angle of 29° 54' 54" an arc distance of 104.42 feet, along a curve to the left having a radius of 650.00 feet through a central angle of 11° 06' 58" an arc distance of 126.11 feet, North 14° 19' 00" East 87.24 feet, along a curve to the right having a radius of 50.00 feet through a central angle of 106° 51' 38" an arc distance of 93.25 feet, South 58° 49' 22" East 80.90 feet, along a curve to the right having a radius of 350.00 feet through a central angle of 24 ° 23' 43" an arc distance of 149.02 feet, South 34° 25' 39" East 125.47 feet, along a curve to the left having a radius of 90.00 feet through a central angle of 111° 11' 12" an arc distance of 174.65 feet to the true point of beginning of the herein described centerline, said point being the Northerly terminus of the course designated as South 9° 36' 36" West 709.71 feet in . the tract of land described in the Deed to Barancik Associates Land & Cattle Company, a General Partnership, recorded May 10, 1993 under Series Number 1993-014397 of Official Records of Napa County; thence continuing along said road, and the Southeasterly lines of said Lands of Barancik, North 34° 23' 09" East 24.77 feet, along a curve to the left having a radius of 210.00 feet through a central angle of 61° 07' 02" an arc distance of 224.01 feet, along a curve to the right having a radius of 60.00 feet through a central angle of 80° 04' 22" an arc distance of 83.85 feet, along a curve to the left having a radius of 90.00 feet through a central angle of 28° 44' 48" an arc distance of 45.16 feet, North 4° 35' 41" East 104.73 feet, along a curve to the right having a radius of 100.00 feet through a central angle of 162° 27' 32" an arc distance of 283.54 feet, along a curve to the left having a radius of 185.00 feet through a central angle of 66° 43' 16" an arc distance of 215.43 feet, South 59° 40' 04" East 132.63 feet, along a curve to the left having a radius of 200.00 feet through a central angle of 17° 48' 59" an arc distance of 62.19 feet, South 77° 29' 03" East 114.08 feet, along a curve to the right having a radius of 90.00 feet through a central angle of 57° 00' 47" an arc distance of 89.56 feet, South 20° 28' 16" East 30.71 feet, along a curve to the left having a radius of 120.00 feet through a central angle of 84° 18' 40" an arc distance of 176.58 feet, along a curve to the left having a radius of 60.00 feet through a central angle of 109° 51' 58" an arc distance of 115.05 feet, North 34° 38' 54" West 20.47 feet, along a curve to the right having a radius of 135.00 feet through a central angle of 36° 07' 15" an arc distance of 85.11 feet, North 1° 28' 21" East 17.01 feet, along a curve to the right having a radius of 200.00 feet through a central angle of 19° 41' 31" an arc distance of 68.74 feet, North 21° 09' 53" East 21.76 feet, along a curve to the left having a radius of 100.00 feet through a central angle of 46° 15' 44" an arc distance of 80.74 feet, North 25° 05' 51" West 26.47 feet, along a curve to the right having a radius of 90.00 feet through a central angle of 26° 49' 48" an arc distance of 42.14 feet, North 1° 43' 57" East 59.91 feet, along a curve to the left having a radius of 68.64 feet through a central angle of 88° 09' 41" an arc distance of 105.61 feet, North 86° 25' 44" West 9.46 feet, along a curve to the left having a radius of 300.00 feet through a central angle of 14° 43' 17" an arc distance of 77.08 feet, South 78°

**EXHIBIT "A" Continued**

51' 00" West, 104.04 feet, along a curve to the right having a radius of 60.00 feet through a central angle of 204° 15' 27" an arc distance of 213.90 feet, South 76° 53' 33" East 104.19 feet, along a curve to the left having a radius of 125.00 feet through a central angle of 26° 10' 44" an arc distance of 57.11 feet; thence leaving said Southeasterly lines of said Lands of Barancik, and continuing along said existing road, North 76° 55' 44" East 64.20 feet, along a curve to the left having a radius of 960.00 feet through a central angle of 4° 13' 46" an arc distance of 70.86 feet and North 72° 41' 57" East 20.62 feet to a point designated as "Four Corners"; thence continuing along an existing road in a Northerly direction the following tangent courses and curves: North 17° 18' 03" West 3.38 feet, along a curve to the left having a radius of 70.00 feet through a central angle of 54° 28' 00" an arc distance of 66.54 feet, North 71° 46' 03" West 64.83 feet, along a curve to the left having a radius of 1500.00 feet through a central angle of 7° 43' 53" an arc distance of 202.41 feet, along a curve to the right having a radius of 72.00 feet through a central angle of 47° 49' 35" an arc distance of 60.10 feet, North 31° 40' 21" West 101.58 feet, along a curve to the right having a radius of 70.00 feet through a central angle of 35° 31' 00" an arc distance of 43.39 feet.

EXCEPTING THEREFROM those portions of the above described 40 foot strip lying within the bounds of Parcel One herein.

PARCEL THREE:
A Roadway and Utility Easement, 60 feet in width, as described in the Deed to Barancik Associates Land & Cattle Co., a general partnership recorded December 11, 1981 in Book 1224 at page 287 of Official Records of Napa County.

PARCEL FOUR:
A non-exclusive Easement, 40 feet in width, for ingress, egress and roadway purposes, the centerline of which is, the centerline of the easement described in the Deed from Barancik Associates Land & Cattle Co. to the City of Napa, recorded December 11, 1981 in Book 1224 at page 278 of Official Records of Napa County.

PARCEL FIVE:
An Easement, 60 feet in width, for road and utility purposes, as conveyed in the Deed to Barancik Associates Land & Cattle Co., a general partnership recorded December 11, 1981 in Book 1224 at page 292 of Official Records of Napa County.

PARCEL SIX:
A non-exclusive Easement, 40 feet in width, for ingress, egress and roadway purposes, the centerline of which is the centerline of the easement conveyed by the Deed from Barancik Associates Land & Cattle Co. to the City of Napa, recorded December 11, 1981 in Book 1224 at page 282 of Official Records of Napa County.

## EXHIBIT "A" Continued

PARCEL SEVEN:
A non-exclusive Easement for utility purposes as and only to the extent as set forth in Article VIII of the Declaration of Covenants, Conditions and Restrictions for "Provence", recorded July 14, 1993 under Series Number 1993-022007 of Official Records of Napa County.

PARCEL EIGHT:
A non-exclusive Easement, 40 feet in width, for secondary emergency access, the centerline of which is described as follows:

BEGINNING at "Four Corners" hereinabove referred to; thence along an existing road in an Easterly direction the following tangent courses and curves: North 72° 41' 57" East 20.63 feet, along a curve to the right having a radius of 70.00 feet through a central angle of 21° 58' 28" an arc distance of 26.85 feet, South 85° 19' 34" East 183.74 feet, along a curve to the right having a radius of 97.00 feet through a central angle of 19° 59' 59" an arc distance of 33.86 feet, South 65° 19' 36" East 59.03 feet, along a curve to the left having a radius of 70.00 feet through a central angle of 23° 44' 55" an arc distance of 29.01 feet, South 89° 04' 30" East 165.92 feet along a curve to the right having a radius of 70.00 feet through a central angle of 28° 09' 15" an arc distance of 34.40 feet, South 60° 55' 16" East 169.95 feet, along a curve to the right having a radius of 70.00 feet through a central angle of 50° 51' 51" an arc distance of 62.14 feet, along a curve to the left having a radius of 70.00 feet through a central angle of 150° 34' 15" an arc distance of 183.96 feet, along a curve to the right having a radius of 70.00 feet through a central angle of 70° 11' 50" an arc distance of 85.76 feet, North 89° 34' 10" East 46.88 feet, along a curve to the left having a radius of 93.00 feet through a central angle of 22° 18' 10" an arc distance of 36.20 feet, North 67° 16' 00" East 52.92 feet, along a curve to the right having a radius of 77.00 feet through a central angle of 46° 12' 3 1" an arc distance of 62.10 feet, South 66° 31' 29" East 66.27 feet, along a curve to the left having a radius of 70.00 feet through a central angle of 25° 05' 43" an arc distance of 30.66 feet, North 88° 22' 49" East 75.37 feet, along a curve to the right having a radius of 94..00 feet through a central angle of 23° 59' 33" an arc distance of 39.36 feet, South 67° 37' 38" East 139.88 feet, along a curve to the right having a radius of 235.00 feet through a central angle of 18° 48' 57" an arc distance of 77.17 feet, South 48° 48' 41" East 28 feet, more or less, to a point on the Easterly line of the parcel of land described in the document recorded September 15, 1994 as Series Number 1994-028054 of Official Records of Napa County.

PARCEL NINE:
A non-exclusive Easement, 40 feet in width, for ingress, egress and roadway purposes, the centerline of which is described as follows:

COMMENCING at a point in the centerline of an existing road. Said point herein designated as Point "B"; thence continuing along said line North 34° 38' 54" West

**EXHIBIT "A" Continued**

20.47 feet, along a curve to the right having a radius of 135.00 feet through a central angle of 36° 07' 15" an arc distance of 85.11 feet, North 1° 28' 21" East 17.01 feet, along a curve to the right having a radius of 200.00 feet through a central angle of 19° 41' 31" an arc distance of 68.74 feet North 21° 09' 53" East 21.76 feet, along a curve to the left having a radius of 100.00 feet through a central angle of 46° 15' 44" an arc distance of 80.74 feet, North 25° 05' 51" West 26.47 feet, along a curve to the right having a radius of 90.00 feet through a central angle of 26° 49' 48" an arc distance of 42.14 feet, North 1° 43' 57" East 53.91 feet, along a curve to the left having a radius of 68.64 feet through a central angle of 88° 09' 41" an arc distance of 105.61 feet, North 86° 25' 44" West 9.46 feet, along a curve to the left having a radius of 300.00 feet through a central angle of 14° 43' 17" an arc distance of 77.08 feet, South 78° 51' 00" West 104.04 feet, along a curve to the right having a radius of 60.00 feet through a central angle of 204° 15' 27" an arc distance of 213.90 feet South 76° 53' 33" East 104.19 feet, along a curve to the left having a radius of 125 feet through a central angle of 26° 10' 44" an arc distance of 57.11 feet; thence leaving said Southeasterly lines of said Lands of Barancik, and continuing along said existing road, North 76° 55' 44" East 64.20 feet, along a curve to the left having a radius of 960.00 feet through a central angle of 4° 13' 46" an arc distance of 70.86 feet and North 72° 41' 57" East 20.62 feet to a point designated as "Four Corners"; thence continuing along an existing road in a Northerly direction the following tangent courses and curves: North 17° 18' 03" West 3.38 feet, along a curve to the left having a radius of 70.00 feet through a central angle of 54° 38' 00" an arc distance of 66.54 feet North 71° 46' 03" West 64.83 feet, along a curve to the left having a radius of 1500 feet through a central angle of 7° 43' 53" an arc distance of 202.41 feet, along a curve to the right having a radius of 72.00 feet through a central angle of 41° 49' 350 an arc distance of 60.10 feet, North 31° 40' 21" West 101.58 feet, along a curve to the right having a radius of 70.00 feet through a central angle of 35° 31' 00" an arc distance of 43.39 feet as reserved in the deed recorded September 15, 1994 as Series Number 1994-028054 of Official Records of Napa County.

Assessor's Parcel Number    **025-280-059**

# EXHIBIT B

COPY
ENDORSED

AUG 2 4 2015

Clerk of the Napa Superior Court
By: L. WALKER
Deputy

STEPHEN J. FOONDOS (SBN: 148982)
JOHN S. SARGETIS (SBN: 80630)
STEPHEN C. RUEHMANN (SBN: 167533)
UNITED LAW CENTER
3013 Douglas Boulevard, Suite 200
Roseville, California 95661
Telephone: (916) 367-0630
Facsimile: (916) 265-9000

Attorneys for Plaintiffs
GEORGE B. NOBLE and PATRICIA L. NOBLE

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF NAPA

| | |
|---|---|
| GEORGE B. NOBLE and PATRICIA L. NOBLE, | Case No. 26-67149 |
| Plaintiffs, | COMPLAINT FOR DAMAGES, EQUITABLE AND INJUNCTIVE RELIEF |
| vs. | 1. Violation of Cal. Civ. Code §2923.6; |
| CALIBER HOME LOANS, INC.; U.S. BANK TRUST, N.A. as Trustee for LSF9 Master Participation Trust; LSF9 MASTER PARTICIPATION TRUST; CLEAR RECON CORP.; and DOES 1 through 10, inclusive, | 2. Violation of Business & Professions Code §17200 |
| | JURY TRIAL DEMANDED |
| Defendants. | |

CASE MANAGEMENT CONFERENCE
DATE: 2-2-16
TIME: 8:30am
PLACE: Courtroom F
NAPA SUPERIOR COURT
1111 THIRD STREET
NAPA, CA 94559

Plaintiffs GEORGE B. NOBLE and PATRICIA L. NOBLE allege the following against Defendants, and each of them, as follows:

1.     Plaintiffs are and at all times herein relevant were individuals residing in St. Helena, Napa County, State of California.

Complaint for Damages and Injunctive Relief

2.    The action is against Defendants for damages, equitable and injunctive relief resulting from the Defendants' acts or omissions as set forth herein concerning the loan ("Subject Loan") secured by Deed of Trust (DOT) against Plaintiffs' home, a single family residence located at 56 Hennessey Ridge Road, St. Helena, CA 94574 ("Subject Property" or "Residence").

3.    Plaintiffs have been actively engaged in efforts to modify the Subject Loan with their loan servicers for several years. In the course of doing so, they have submitted numerous Requests for Mortgage Assistance ("RMA's") and all supporting financial information and documentation requested by their servicers. As relevant to this Complaint, at the request of then-servicer Bank of America ("BOA"), Plaintiffs submitted yet another RMA with supporting financial information and documentation in August of 2014. During a telephone conversation with Mandy McClain (BOA's then-assigned customer relationship manager) on August 25, 2014, BOA acknowledged receipt of Plaintiffs' latest RMA and supporting documentation and said the request for a modification would be evaluated prior to foreclosure.

4.    In a letter dated October 4, 2014, BOA acknowledged receiving Plaintiffs' packet but requested new IRS Form 4506-T's and that Plaintiffs identify any cash reserves for the bank accounts and statements already provided. Plaintiffs promptly provided the forms and information requested.

5.    On November 6, 2014, Plaintiffs went to BOA's website and accessed the Subject Loan account. The website confirmed that Plaintiffs' modification application was complete in that all required information and materials had been received by BOA. It further informed Plaintiffs that they could expect a decision on their application in 30 days. During a telephone conversation with Plaintiffs on November 7, 2014, Danny Theriot also confirmed that Plaintiffs' modification application was complete. During this same conversation, Mr. Theriot informed Plaintiffs that BOA would be transferring servicing to a third party on November 16, 2014, but assured Plaintiffs that the new servicer would continue to process the complete loan modification application already submitted.

2
Complaint for Damages and Injunctive Relief

6.    BOA assigned ownership of the Subject Loan to LSF9 Mortgage Holdings, LLC ("LSF9") by instrument recorded on November 6, 2014.

7.    In a letter from Caliber Home Loans, Inc. ("Caliber") dated November 25, 2014, Plaintiffs were informed that the servicing of the Subject Loan was in fact transferred from BOA to Caliber effective November 16, 2014. This letter assured Plaintiffs that the transfer of servicing would not affect any term or condition of the Subject Loan or any rights they might have under law, which would include processing the complete modification application pending at the time of transfer. Plaintiffs are informed, believe and on that basis allege that Caliber services the Subject Loan on behalf of LSF9 and acts as its agent in doing so.

8.    Following transfer of servicing to Caliber, Plaintiffs repeatedly sought some decision on their pending loan modification application, to no avail. Then, on March 12, 2015, Caliber's foreclosing agent, Clear Recon Corp., recorded a Notice of Trustee's Sale for the Subject Property. The notice set the trustee's sale for April 8, 2015.

9.    Upon receipt of the Notice of Trustee's Sale described above, Plaintiffs immediately contacted Caliber to ask why a trustee's sale had been noticed given the lack of any decision on their pending loan modification application. During this conversation, Plaintiffs were informed that Caliber would not continue to process the modification application or render a decision thereon because it was "too late" to do so. No further explanation was provided. In an effort to enforce their rights, Plaintiffs filed suit against Caliber and others on April 7, 2015 (Napa County Sup. Ct. Case No. 28-68217). That suit is being dismissed in conjunction with the initiation of this action.

10.    The trustee's sale initially set for April 8, 2015 was then continued several times but is now scheduled to take place on August 31, 2015 at 1:45 PM.

11.    To date Defendants have refused to process, consider or decide upon Plaintiffs' application for a loan modification prior, informing Plaintiffs instead that they will not do so and rather will sell the property on August 31, 2015 as presently noticed.

12.    All references to Defendants' capacity in recorded documents set forth in this Complaint are purported, whether specifically stated or not.

13. Whenever reference is made in this Complaint to any act of any corporate or other business Defendant, that reference shall mean that the corporation or other business did the acts alleged in this Complaint through its officers, directors, employees, agents and/or representatives while acting within the actual and ostensible scope of their authority.

14. The true names and capacities, whether individual, corporate, associate or otherwise of Defendants named herein as DOES 1 through 50 are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names, and Plaintiffs will amend this Complaint to show their true names, involvement and capacities when the same has been ascertained. Plaintiffs are informed and believe, and on that basis allege, that each of the Defendants named herein as DOE was in some manner responsible for the harm and losses suffered by Plaintiffs and/or will be responsible for future harm and losses to Plaintiffs.

## FIRST CAUSE OF ACTION
### Violation of Cal. Civ. Code §2923.6
#### (Against All Defendants)

15. Plaintiffs incorporate by reference each of the allegations set forth above as though fully set forth herein.

16. Pursuant to the Homeowner's Bill of Rights and Civil Code §2923.6 (c) that went into effect on January 1, 2013: "(c) (1) If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent shall not record a notice of default, notice of sale, or conduct a trustee's sale while the complete first lien loan modification application is pending, and until the borrower has been provided with a written determination by the mortgage servicer regarding that borrower's eligibility for the requested loan modification."

17. Plaintiffs submitted a complete first lien loan modification in August and October of 2014 and are therefore entitled to the protections of Civil Code §2923.6. Plaintiffs' loan

servicer acknowledged receipt of a complete loan modification application and of all necessary supporting information and documents. Nonetheless, Defendants' recorded a notice of trustee's sale on March 12, 2014 and now intends to proceed with said trustee's sale on August 31, 2015. Defendants' conduct materially violates Civil Code §2923.6 and Plaintiffs will be further damaged if Defendants are permitted to proceed with a trustee's sale in violation of said statute.

18. Trustee's sales in violation of Section 2923.6 may be enjoined pursuant to Civil Code §2924.12. Plaintiffs seek to preserve their legal rights under Section 2923.6 by obtaining an injunction pursuant to Section 2924.12. Attorneys' fees and costs are permitted Plaintiffs if they prevail on this claim.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

### SECOND CAUSE OF ACTION
Violation of Bus. & Prof. Code §17200, et seq.
(Against All Defendants)\

19. Plaintiffs incorporate by reference the allegations set forth above as though fully set forth herein.

20. Plaintiffs alleges that the unlawful acts and practices of Defendants alleged herein constitute unlawful, unfair or fraudulent business practices within the meaning of California Business and Professions Code §17200, et seq.

21. In addition to the above stated acts and conduct, Defendants are in continual violation of the Homeowner Bill of Rights by maintaining the foreclosure process while there is pending a complete loan modification application.

22. The totality of Defendants' conduct was and is inherently unfair to Plaintiffs as it was and is against public policy, immoral, unethical, oppressive, unscrupulous and substantially injurious to Plaintiffs, specifically, and consumers, in general. Additionally, Defendants' conduct as described throughout this Complaint was unfair in that the negative impact on Plaintiffs (as described above) far outweighs any benefit to Defendants.

23. As described above, Defendants by and through their assignees, agents, employees and representatives, engaged in various unlawful conduct with respect to the Plaintiffs' attempts at a loan modification, as more fully described above. Plaintiffs are informed and believe and thereon allege that Defendants never had any intention to consider or make a decision on Plaintiffs' loan modification application prior to completing a trustee's sale of the Subject Property, all in violation of Plaintiffs' rights under Civil Code §§2923.6 and 2924.12, which acts constitute per se violations of Cal. Bus.&Prof. Code §17200.

24. Defendants have acted in a manner that is both wrongful and likely to mislead members of the general public in their actions regarding the Subject Loan. Specifically, by recording an unlawful notice of trustee's sale, Defendants have abused process and misled the public by publishing an unlawful trustee's sale of Plaintiffs' home.

25. As a result of Defendants' unlawful, unfair and fraudulent conduct, Plaintiffs face the unlawful sale and loss of their right, title and interest in the Subject Property, and therefore have standing to bring a claim under this statute.

26. Plaintiffs seek restitution and disgorgement, and such other relief afforded under Cal. Bus. & Prof. Code §17200, et seq. as the Court may deem just and proper.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

## PRAYER FOR RELIEF

a.   For compensatory damages in an amount to be determined by proof at trial;

b.   For special damages in an amount to be determined by proof at trial;

c.   For general and punitive damages in an amount to be determined by proof at trial;

d.   For attorney's fees and costs of this action;

e.   For injunctive relief pursuant to Cal Civ. Code § 2923.12;

f.   For any prejudgment or other interest according to law; and

g.   For such other relief as the Court deems just and proper.

DATED: August 24, 2014

UNITED LAW CENTER
A Professional Law Corporation

By:

Stephen C. Ruehmann
Attorney for Plaintiffs

# EXHIBIT C

JOHN S. SARGETIS (SBN: 80630)
STEPHEN RUEHMANN (SBN: 167533)
UNITED LAW CENTER
3013 Douglas Boulevard, Suite 200
Roseville, California 95661
Telephone: (916) 367-0630
Facsimile: (916) 265-9000

Attorneys for Plaintiffs,
GEORGE AND PATRICIA NOBLE

THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF NAPA

GEORGE NOBLE AND PATRICIA
NOBLE,

        Plaintiffs,

vs.

CALIBER HOME LOANS, INC.;
U.S. BANK TRUST, N.A. as Trustee for
LSF9 Master Participation Trust; LSFR
MASTER PARTICIPATION TRUST;
CLEAR RECON CORP.; and DOES 1
through 10, inclusive.

        Defendants.

Case No. 26-67149

FIRST AMENDED COMPLAINT FOR
DAMAGES, EQUITABLE AND
INJUNCTIVE RELIEF

1. Violation of Cal. Civ. Code §2923.6;
2. Violation of Business & Professions
   Code §17200

JURY DEMANDED

      Plaintiffs GEORGE B. NOBLE and PATRICIA L. NOBLE allege the following

against Defendants, and each of them as a First Amended Complaint, as follows:

      1. Plaintiffs are and at all times herein relevant were individuals residing in St. Helena,

Napa County, State of California.

2. The action is against Defendants for damages, equitable and injunctive relief resulting from the Defendants' acts or omissions as set forth herein concerning the loan ("Subject Loan") secured by Deed of Trust (DOT) against Plaintiffs' home, a single family residence located at 56 Hennessey Ridge Road, St. Helena, CA 94574 ("Subject Property" or "Residence").

3. Plaintiffs have been actively engaged in efforts to modify the Subject Loan with their loan servicers for several years. In the course of doing so, they have submitted numerous Requests for Mortgage Assistance ("RMA's") and all supporting financial information and documentation requested by their servicers.

4. As relevant to this Complaint, at the request of then-servicer Bank of America ("BOA"), Plaintiffs submitted yet another RMA with supporting financial information and documentation in August of 2014.

5. During a telephone conversation with Mandy McClain (BOA's then-assigned customer relationship manager) on August 25, 2014, BOA acknowledged receipt of Plaintiffs' latest RMA and supporting documentation and said the request for a modification would be evaluated prior to foreclosure.

6. In a letter dated October 4, 2014, BOA acknowledged receiving Plaintiffs' packet but requested new IRS Form 4506-T's and that Plaintiffs identify any cash reserves for the bank accounts and statements already provided. Plaintiffs promptly provided the forms and information requested.

7. On November 6, 2014, Plaintiffs went to BofA's website and accessed the Subject

Loan account. The website confirmed that Plaintiffs' modification application was complete in that all required information and materials had been received by BOA. It further informed Plaintiffs that they could expect a decision on their application in 30 days.

8. During a telephone conversation with Plaintiffs on November 7, 2014, Danny Theriot of BofA also confirmed that Plaintiffs modification application was complete.

9. During this same conversation, Mr. Theriot informed Plaintiffs that BOA would be transferring servicing to a third party on November 16, 2014, but assured Plaintiffs that the new servicer would continue to process the complete loan modification application already submitted.

10. BOA assigned ownership of the Subject Loan to LSF9 Mortgage Holdings, LLC ("LSF9") by instrument recorded on November 6, 2014.

11. In a letter from Caliber Home Loans, Inc. ("Caliber") dated November 25, 2014, Plaintiffs were informed that the servicing of the Subject Loan was in fact transferred from BOA to Caliber effective November 16, 2014. This letter assured Plaintiffs that the transfer of servicing would not affect any term or condition of the Subject Loan or any rights they might have under law, which would include processing the complete modification application pending at the time of transfer. Plaintiffs are informed, believe and on that basis allege that Caliber services the Subject Loan on behalf of LSF9 and acts as its agent in doing so.

12. Upon the transfer to Caliber of the loan, therefore Caliber was aware of the complete modification package that BofA had in its possession and therefore as a matter of law was required to assume the status of the modification application and act on it.

13.    Under these circumstances it was not necessary for plaintiff to submit a new modification application to Caliber.

14.    Furthermore as alleged in para. 11 above a representation was made to plaintiff from Caliber that they would review the pending application for a modification that BofA had in its possession.

15.    Following transfer of servicing to Caliber, Plaintiffs repeatedly sought some decision on their pending loan modification application from Caliber, to no avail.

16.    Then, on March 12, 2015, Caliber's foreclosing agent, Clear Recon Corp., recorded a Notice of Trustee's Sale for the Subject Property. The notice set the trustee's sale for April 8, 2015.

17.    Upon receipt of the Notice of Trustee's Sale described above, Plaintiffs immediately contacted Caliber to ask why a trustee's sale had been noticed given the lack of any decision on their pending loan modification application.

18.    During this conversation, Plaintiffs were informed that Caliber would not continue to process the modification application or render a decision thereon because it was "too late" to do so. No further explanation was provided.

19.    In an effort to enforce their rights, Plaintiffs filed suit against Caliber and others on April 7, 2015 (Napa County Sup. Ct, Case No. 28-68217). That suit is being dismissed in conjunction with the initiation of this action.

20.    The trustee's sale initially set for April 8, 2015 was then continued several times but is now scheduled to take place on August 31, 2015 at 1:45 p.m.

21.    To date Defendants have refused to process, consider or decide upon Plaintiffs'

application for a loan modification prior, informing Plaintiffs instead that they will not do so and rather will sell the property on August 31, 2015 as presently noticed.

22. All references to Defendants' capacity in recorded documents set forth in this Complaint are purported, whether specifically stated or not;

23. Whenever reference is made in this Complaint to any act of any corporate or other business Defendant, that reference shall mean that the corporation or other business did the acts alleged in this Complaint through its officers, directors, employees, agents and/or representatives while acting within the actual and ostensible scope of their authority.

24. The true names and capacities, whether individual, corporate, associate or otherwise of Defendants named herein as DOES 1 through 50 are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names, and Plaintiffs will amend this Complaint to show their true names, involvement and capacities when the same has been ascertained. Plaintiffs are informed and believe, and on that basis allege, that each of the Defendants named herein as DOE was in some manner responsible for the harm and losses suffered by Plaintiffs and/or will be responsible for future harm and losses to Plaintiffs.

### FIRST CAUSE OF ACTION
### Violation of Cal. Civ. Code §2923.6
### (Against All Defendants)

25. Plaintiffs incorporate by reference each of the allegations set forth above as though fully set forth herein.

26. Pursuant to the Homeowner's Bill of Rights and Civil Code §2923.6 (c) that went into effect on January 1, 2013: "(c) (1) If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a

mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent shall not record a notice of default, notice of sale, or conduct a trustee's sale while the complete first lien loan modification application is pending, and until the borrower has been provided with a written determination by the mortgage servicer regarding that borrower's eligibility for the requested loan modification."

27. Plaintiffs submitted a complete first lien loan modification in August and October of 2014 and are therefore entitled to the protections of Civil Code §2923.6. Plaintiffs' loan servicer acknowledged receipt of a complete loan modification application and of all necessary supporting information and documents. Nonetheless, Defendants' recorded a notice of trustee's sale on March 12, 2014 and now intends to proceed with said trustee's sale on August 31, 2015. Defendants' conduct materially violates Civil Code §2923.6 and Plaintiffs will be further damaged if Defendants are permitted to proceed with a trustee's sale in violation of said statute.

28. A Trustee's sales in violation of Section 2923.6 may be enjoined pursuant to Civil Code §2924.12. Plaintiffs seek to preserve their legal rights under Section 2923.6 by obtaining an injunction pursuant to Section 2924.12. Attorneys' fees and costs are permitted Plaintiffs if they prevail on this claim.

WHEREFORE; Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

## SECOND CAUSE OF ACTION
### Violation of Bus. & Prof. Code §17200, et seq.
### (Against All Defendants)

29. Plaintiffs incorporate by reference the allegations set forth above as though fully

set forth herein.

30. Plaintiffs alleges that the unlawful acts and practices of Defendants alleged herein constitute unlawful, unfair or fraudulent business practices within the meaning of California Business and Professions Code §17200, et seq.

31. In addition to the above stated acts and conduct, Defendants are in continual violation of the Homeowner Bill of Rights by maintaining the foreclosure process while there is pending a complete loan modification application.

32. The totality of Defendants' conduct was and is inherently unfair to Plaintiffs as it was and is against public policy, immoral, Unethical, oppressive, unscrupulous and substantially injurious to Plaintiffs, specifically, and consumers, in general. Additionally, Defendants' conduct as described throughout this Complaint was unfair in that the negative impact on Plaintiffs (as described above) far outweighs any benefit to Defendants.

33. As described above, Defendants by and through their assignees, agents, employees and representatives, engaged in various unlawful conduct with respect to the Plaintiffs' attempts at a loan modification, as more fully described above. Plaintiffs are informed and believe and thereon allege that Defendants never had any intention to consider or make a decision on Plaintiffs' loan modification application prior to completing a trustee's sale of the Subject Property, all in violation of Plaintiffs' rights under Civil Code §§2923.6 and 2924.12, which acts constitute per se violations of Cal. Bus.&Prof. Code §17200.

34. Defendants have acted in a manner that is both wrongful and likely to mislead members of the general public in their actions regarding the Subject Loan. Specifically, by recording an unlawful notice of trustee's sale, Defendants have abused process and misled

the public by publishing an unlawful trustee's sale of Plaintiffs' home.

35. As a result of Defendants' unlawful, unfair and fraudulent conduct, Plaintiffs face the unlawful sale and loss of their right, title and interest in the Subject Property, and therefore have standing to bring a claim under this statute.

36. Plaintiffs seek restitution and disgorgement, and such other relief afforded under Cal. Bus. & Prof. Code §17200, et seq. as the Court may deem just and proper.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

## PRAYER FOR RELIEF

a. For compensatory damages in an amount to be determined by proof at trial;

b. For special damages in an amount to be determined by proof at trial;

c. For general and punitive damages in an amount to be determined by proof at trial;

d. For attorney's fees and costs of this action;

e. For injunctive relief pursuant to Cal Civ. Code § 2923.12;

f. For any prejudgment or other interest according to law; and

g. For such other relief as the Court deems just and proper.

DATED: December 11, 2015                Respectfully submitted,

UNITED LAW CENTER
A Professional Law Corporation


JOHN S. SARGETIS
Attorney for Plaintiffs

## PROOF OF SERVICE

I, Kathy K. Pillado, declare that I am a citizen of the United States, over 18 years of age, a resident of Sacramento County, and not a party to the within action. My business address is 3013 Douglas Blvd, Suite 200, Roseville, CA 95661.

On the date below, I served a copy of the following document(s):

### FIRST AMENDED COMPLAINT

on all interested parties in this action by placing a copy thereof enclosed in sealed envelopes, addressed as follows:

| | |
|---|---|
| David T. Biderman<br>Perkins Coie LLP<br>1888 Century Park E., Suite 1700<br>Los Angeles, California 90067-1721<br>Tel: (310) 788-9900<br>Fax: (310) 843-1284<br>Email: dbiderman@perkinscoie.com | Defendants Caliber Home Loans, Inc., and U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust |
| Genail M. Anderson<br>Aldridge Pite, LLP<br>4375 Jutland Drive, Suite 200<br>San Diego, California 92177-0935<br>Tel: (858) 750-7600<br>Fax: (619) 326-2430<br>Email: ganderson@aldridgepite.com | Defendants Clear Recon Corp.<br><br>*NON-MONETARY STATUS FILED*<br><br>*Courtesy Copy Provided* |

( )    **(BY FEDERAL EXPRESS)** I caused such envelope with overnight fees paid to be deposited in a box regularly maintained by Federal Express service carrier at Roseville, CA.

(X)    **(BY MAIL)** I caused such envelopes with postage thereon fully prepaid to be placed in the United States mail at Roseville, CA.

( )    **(BY PERSONAL SERVICE)** I caused such envelope to be delivered by hand to the offices of the addressee.

(X)    **(BY FAX and/or E-mail)** I caused such document to be sent, via Facsimile (FAX) and/or E-mail Telecommunication transmission, to the offices of the addressee.

I declare under penalty of perjury that the foregoing is true and correct. This declaration is executed in Roseville, California on December 11, 2015.

KATHY K. PILLADO

# EXHIBIT D

# ENDORSED

MAY 19 2016

CLERK OF THE NAPA SUPERIOR COURT
By: __L. BROWNFIELD__
Deputy

1  David T. Biderman, Bar No. 101577
   DBiderman@perkinscoie.com
2  Ofunne N. Edoziem, Bar No. 260000
   OEdoziem@perkinscoie.com
3  PERKINS COIE LLP
   1888 Century Park E., Suite 1700
4  Los Angeles, CA 90067-1721
   Telephone: 310.788.9900
5  Facsimile: 310.843.1284

6  Attorneys for Defendants
   CALIBER HOME LOANS, INC. and
7  U.S. BANK TRUST, N.A., AS TRUSTEE FOR
   LSF9 MASTER PARTICIPATION TRUST

8

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

9
## COUNTY OF NAPA

10

11  GEORGE NOBLE AND PATRICIA              Case No. 26-67149
12  NOBLE,
                                           NOTICE OF RULING REGARDING
13                 Plaintiffs,             DEFENDANTS' DEMURRER TO
                                           PLAINTIFFS' FIRST AMENDED
14        v.                               COMPLAINT

15  CALIBER HOME LOANS, INC.;              Date:   May 31, 2016
    U.S. BANK TRUST, N.A., as Trustee for  Time:   8:30 a.m.
16  LSF9 Master Participation Trust; LSF9  Dept.:  F
    MASTER PARTICIPATION TRUST;
17  CLEAR RECON CORP.; and DOES 1          Judge:  Hon. Rodney G. Stone
    through 10, inclusive,
18
                   Defendants.             Complaint Filed: August 24, 2015
19

20

21

22

23

24

25

26

27

28

[31089732.]

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on March 30, 2016, in Department F of the Superior Court, County of Napa, the Court issued a Tentative Ruling on Defendants Caliber Home Loans, Inc. and U.S. Bank and Trust, N.A., as Trustee for LSF9 Master Participation Trust's ("Defendants"), Demurrer to Plaintiffs' George Noble and Patricia Noble's ("Plaintiffs"), First Amended Complaint. There were no appearances and no requests for oral hearing.

The Court adopted its Tentative Ruling as set forth below:

1.      Both Plaintiffs' and Defendants' Requests for Judicial Notice are GRANTED.

2.      Defendants' Demurrer is SUSTAINED WITH LEAVE TO AMEND. Plaintiffs' First Cause of Action for Violation of Civil Code section 2923.6 fails to allege that they submitted a complete application for loan modification to Defendants. Civil Code section 2926.6 does not set forth any requirements for a subsequent loan servicer to process an application submitted to a prior loan servicer. *Valbuena v. Ocwen Loan Servicing, LLC* (2015) 237 Cal.App.4th 1267 is distinguishable as plaintiffs in that case alleged the loan servicer had requested and accepted documents for a loan modification application while moving forward with a trustee sale. No similar allegations are present in this case. Plaintiffs' citation to 12 CFR section 1024.41(i) appears to be incorrect; the actual language of the section does not support Plaintiffs' arguments.

As Plaintiffs' Second Cause of Action for Violation of Business & Professions Code section 17200 relies on the alleged violation in Plaintiffs' First Cause of Action, it also fails to state a cause of action. In addition, Defendants are correct that Plaintiffs have failed to allege a loss of money or property as a result of any unlawful, unfair or fraudulent business act or practice by Defendants.

///

///

///

1        3.   The Case Management Conference is continued to May 31, 2016, at

2  8:30 a.m. In Department F.

3        4.   Defendants are ordered to give notice.

4        5.   Attached as Exhibit A, is a true and correct copy of the Tentative Ruling.

5

6  DATED: May 19, 2016            PERKINS COIE LLP

7

8                   By:

                       Ogonno N. Edozien

9                 Attorneys for Defendants

10              CALIBER HOME LOANS, INC. and

                U.S. BANK TRUST, N.A., AS TRUSTEE FOR

11             LSF9 MASTER PARTICIPATION TRUST

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF RULING REGARDING DEFENDANTS'
DEMURRER TO FIRST AMENDED COMPLAINT

# EXHIBIT A

# TENTATIVE RULINGS

## FOR: March 30, 2016

The Court may exercise its discretion to disregard a late filed paper in law and motion matters. (Cal. Rules of Court, rule 3.1300(d).)

**Unlawful Detainer Cases** -- No tentative ruling will be posted because access to records is not permitted until 60 days after the complaint is filed. Parties must appear for all unlawful detainer demurrers, motions to quash, and other matters. After 60 days, tentative rulings will be posted in accordance with the local rules.

**Court Reporting Services** -- The Court does not provide official court reporters in proceedings for which such services are not legally mandated. These proceedings include civil law and motion hearings. If counsel want their civil law and motion hearing reported, they must arrange for a private court reporter to be present. Go to http://napacountybar.org/court-reporting-services/ for information about local private court reporters. Attorneys or parties must confer with each other to avoid having more than one court reporter present for the same hearing.

## PROBATE CALENDAR -- Hon. Rodney Stone, Dept. F (Criminal Courts Bldg.-1111 Third St.)

### Estate of Kathleen Ann Shafer                    16PR000003

PETITION FOR LETTERS OF ADMINISTRATION AND AUTHORIZATION TO ADMINISTER UNDER THE INDEPENDENT ADMINISTRATION OF ESTATES ACT

TENTATIVE RULING: GRANT Petition.

### Estate of Margaret Joanne Jenson                 26-68120

PETITION FOR LETTERS OF ADMINISTRATION

TENTATIVE RULING: The Petition is GRANTED.

### In The Matter of Benjamin Reynolds, et al.        26-68169

PETITION FOR CHANGE OF NAME

TENTATIVE RULING: Notice has been properly published and no written objections have been filed. The petition for name change shall therefore be GRANTED without need for appearance.

## CIVIL LAW & MOTION CALENDAR – Hon. Rodney Stone, Dept. F (Criminal Courts Bldg.-1111 Third St.)

George Noble, et al, v. Caliber Home Loans, Inc., et al.        26-67149

DEMURRER TO PLAINTIFFS' FIRST AMENDED COMPLAINT

TENTATIVE RULING: Both Plaintiffs' and Defendants' Requests for Judicial Notice are GRANTED.

Defendants' Demurrer is SUSTAINED WITH LEAVE TO AMEND. Plaintiffs' First Cause of Action for Violation of Civil Code section 2923.6 fails to allege that they submitted a complete application for loan modification to Defendants. Civil Code section 2926.6 does not set forth any requirements for a subsequent loan servicer to process an application submitted to a prior loan servicer. *Valbuena v. Ocwen Loan Servicing, LLC* (2015) 237 Cal.App.4th 1267 is distinguishable as plaintiffs in that case alleged the loan servicer had requested and accepted documents for a loan modification application while moving forward with a trustee sale. No similar allegations are present in this case. Plaintiffs' citation to 12 CFR section 1024.41(l) appears to be incorrect; the actual language of the section does not support Plaintiffs' arguments.

As Plaintiffs' Second Cause of Action for Violation of Business & Professions Code section 17200 relies on the alleged violation in Plaintiffs' First Cause of Action, it also fails to state a cause of action. In addition, Defendants are correct that Plaintiffs have failed to allege a loss of money or property as a result of any unlawful, unfair or fraudulent business act or practice by Defendants.

The Case Management Conference is continued to May 31, 2016 at 8:30 a.m. in Dept. F.

## PROBATE CALENDAR – Hon. Diane Price, Dept. I (Criminal Courts Bldg.-1111 Third St.)

Estate of Vito G. Montelli        16PR000004

PETITION FOR PROBATE OF WILL AND FOR LETTERS TESTAMENTARY; AUTHORIZATION TO ADMINISTER UNDER THE INDEPENDENT ADMINISTRATION OF ESTATES ACT

TENTATIVE RULING: GRANT petition.

## PROOF OF SERVICE BY OVERNIGHT DELIVERY

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 1888 Century Park E., Suite 1700, Los Angeles, California 90067-1721. On May 19, 2016, I deposited with FedEx, a true and correct copy of the within documents:

**NOTICE OF RULING REGARDING DEFENDANTS' DEMURRER TO PLAINTIFFS' FIRST AMENDED COMPLAINT**

in a sealed envelope, addressed as follows:

Stephen J. Foondos, Esq.
Stephen Ruehmann, Esq.
John S. Sargetis, Esq.
UNITED LAW CENTER
3013 Douglas Boulevard, Suite 200
Roseville, California 95661
Telephone: (916) 367-0630
Facsimile: (916) 265-9000

*Attorneys for Plaintiffs*
*GEORGE AND PATRICIA NOBLE*

Following ordinary business practices, the envelope was sealed and placed for collection by FedEx on this date, and would, in the ordinary course of business, be retrieved by FedEx for overnight delivery on this date.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on May 19, 2016, at Los Angeles, California.

_____
Carolyn A. Sanford

# EXHIBIT E

David T. Biderman, Bar No. 101577
DBiderman@perkinscoie.com
Ofunne N. Edoziem, Bar No. 260000
OEdoziem@perkinscoie.com
PERKINS COIE LLP
1888 Century Park E., Suite L700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.843.1284

Attorneys for Defendants
CALIBER HOME LOANS, INC. and
U.S. BANK TRUST, N.A., AS TRUSTEE FOR
LSF9 MASTER PARTICIPATION TRUST
(erroneously sued separately as U.S. Bank Trust,
N.A. as Trustee for LSF9 Master Participation
Trust" and "LSFR Master Participation Trust")

**ENDORSED**

**JUL 14 2016**

CLERK OF THE NAPA SUPERIOR COURT
BY_____B. LOPEZ_____
DEPUTY

By Fax

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF NAPA

| | |
|---|---|
| GEORGE NOBLE AND PATRICIA NOBLE,<br><br>Plaintiffs,<br><br>v.<br><br>CALIBER HOME LOANS, INC.;<br>U.S. BANK TRUST, N.A. as Trustee for<br>LSF9 Master Participation Trust; LSFR<br>MASTER PARTICIPATION TRUST;<br>CLEAR RECON CORP.; and DOES 1<br>through 10, inclusive,<br><br>Defendants. | Case No. 26-67149<br><br>[PROPOSED] ORDER DISMISSING<br>ACTION PURSUANT TO CODE OF<br>CIVIL PROCEDURE SECTION 581(f)(2)<br><br>Date: July 14, 2016<br>Time: 11:30 a.m.<br>Dept: I<br>Judge: Hon. Diane M. Price<br><br>Complaint Filed: August 24, 2015 |

1   The *Ex Parte* Application of defendants CALIBER HOME LOANS, INC, ("Caliber") and

2   U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST

3   (erroneously sued separately as U.S. Bank Trust, N.A. as Trustee for LSF9 Master Participation

4   Trust" and "LSFR Master Participation Trust") ("U.S. Bank Trust as Trustee") (together

5   "Defendants") came on for hearing on July 14, 2016, at 11:30 a.m., in Department I of the

6   above-entitled court. The appearances were as noted in the Court's record. The Honorable

7   Diane M. Price presiding.

8       The Court, having read and considered Defendants' *Ex Parte* Application to Dismiss

9   Action with Prejudice Pursuant to Code Civ, Proc, Section 581 (f)(2), and all pleadings and

10  evidence in this matter; having heard argument of counsel or the parties; and good cause

11  appearing therefore, it is hereby ordered that Defendants are dismissed from the action with

12  prejudice.

13      IT IS SO ORDERED.

14

15  Dated:      JUL 1 4 2016              **M. STONE**

16                                        Diane M. Price
                                          Judge of the Napa County Superior Court
17

18

19

20

21

22

23

24

25

26

27

28

---

[PROPOSED] ORDER DISMISSING ACTION PURSUANT TO C.C.P. SECTION 581(f)(2)

LEGAL131067915.1

# EXHIBIT F

FAXED

1  David T. Biderman, Bar No. 101577
   DBiderman@perkinscoie.com
2  Ofunne N. Edoziem, Bar No. 260000
   OEdoziem@perkinscoie.com
3  PERKINS COIE LLP
   1888 Century Park E., Suite 1700
4  Los Angeles, CA 90067-1721
   Telephone: 310.788.9900
5  Facsimile: 310.788.3399

6  Attorneys *Specially Appearing* for Defendants
   CALIBER HOME LOANS, INC. and U.S. BANK
7  TRUST, N.A., AS TRUSTEE FOR LSF9 MASTER
   PARTICIPATION TRUST

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                               COUNTY OF NAPA

10

11

12 GEORGE NOBLE AND PATRICIA                Case No. 26-67149
   NOBLE,
13                                          [PROPOSED] ORDER DENYING
                    Plaintiffs,             PLAINTIFFS' MOTION TO SET ASIDE
14                                          DISMISSAL
           v.
15                                          Date:     February 1, 2017
   CALIBER HOME LOANS, INC.;                Time:     8:30 a.m.
16 U.S. BANK TRUST, N.A. as Trustee for     Dept:     F
   LSF9 Master Participation Trust; LSFR    Judge:    Hon. Rodney Stone
17 MASTER PARTICIPATION TRUST;
   CLEAR RECON CORP.; and DOES 1            Complaint Filed: August 24, 2015
18 through 10, inclusive,

19                  Defendants.

20

21

22

23

24

25

26

27

28

              [PROPOSED] ORDER DENYING PLAINTIFFS' MOTION TO SET ASIDE DISMISSAL
LEGAL134934233.1

Plaintiffs GEORGE NOBLE and PATRICIA NOBLE's (together "Plaintiffs") Motion to Set Aside Dismissal came on for hearing on February 1, 2017, at 8:30 a.m., in Department F of the above-entitled court. Ofunne Edoziem of Perkins Coie LLP appeared as counsel of record on behalf of CALIBER HOME LOANS, INC. ("Caliber") and U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST (erroneously sued separately as U.S. Bank Trust, N.A. as Trustee for LSF9 Master Participation Trust" and "LSFR Master Participation Trust") ("U.S. Bank Trust as Trustee") (together "Defendants"). There were no appearances by Plaintiffs or any other party. The Honorable Rodney Stone presiding.

The Court, having read and considered Plaintiffs' Motion to Set Aside Dismissal; Defendants' opposition, and all pleadings and evidence in this matter; having heard argument of counsel or the parties; and good cause appearing therefore,

IT IS HEREBY ORDERED that:

    1.    Plaintiffs' Motion to Set Aside Dismissal is DENIED.

    2.    The Court adopted its Tentative Ruling in full, a copy of which is attached hereto as Exhibit A.


IT IS SO ORDERED.

Dated: 2/1/7

**R. STONE**
Rodney Stone
Judge of the Napa County Superior Court

[PROPOSED] ORDER DENYING PLAINTIFFS' MOTION TO SET ASIDE DISMISSAL
LEGAL134334233.1

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 1888 Century Park E., Suite 1700, Los Angeles, California 90067-1721. On February 2, 2017, I deposited with Federal Express, a true and correct copy of the within documents:

[PROPOSED] ORDER DENYING PLAINTIFFS' MOTION TO SET ASIDE DISMISSAL

In a sealed envelope, addressed as follows:

Clarisse Chung, Esq.
Crossroads Legal Group
800 W. El Camino Real Suite 180
Mountain View, CA 94040
Telephone: (650) 332-4905
Email:
clarisse@crossroadslegalgroup.com

Attorneys for Plaintiffs
GEORGE NOBLE and
PATRICIA NOBLE,

Michael Yesk, Esq.
Yesk Law
70 Doray Drive, Suite 16
Pleasant Hill, CA 94523
Telephone: (925) 849-5525
Email: yesklaw@gmail.com

Attorneys for Plaintiffs
GEORGE NOBLE and
PATRICIA NOBLE,

Following ordinary business practices, the envelope was sealed and placed for collection by Federal Express on this date, and would, in the ordinary course of business, be retrieved by Federal Express for overnight delivery on this date.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 2, 2017, at Los Angeles, California.

Carolyn A. Sanford

[PROPOSED] ORDER DENYING PLAINTIFFS' MOTION TO SET ASIDE DISMISSAL

LEGAL134734233.1

# EXHIBIT A

# TENTATIVE RULINGS

## FOR: February 1, 2017

The Court may exercise its discretion to <u>disregard</u> a late filed paper in law and motion matters. (Cal. Rules of Court, rule 3.1300(d).)

Unlawful Detainer Cases -- Pursuant to the restrictions in Code of Civil Procedure section 1161.2, no tentative rulings are posted for unlawful detainer cases and appearances are required.

Court Reporting Services -- The Court does not provide official court reporters in proceedings for which such services are not legally mandated. These proceedings include civil law and motion hearings. If counsel want their civil law and motion hearing reported, they must arrange for a private court reporter to be present. Go to http://napacountybar.org/court-reporting-services/ for information about local private court reporters. Attorneys or parties must confer with each other to avoid having more than one court reporter present for the same hearing.

## CIVIL LAW & MOTION CALENDAR -- Hon. Rodney Stone, Dept. C (Historic Courthouse)

Swift Financial Corporation v. Jaspal Singh          16CV001095

PETITION TO CONFIRM CONTRACTUAL ARBITRATION AWARD

TENTATIVE RULING: The unopposed Petition is GRANTED.

＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊＊

George Noble, et al. v. Caliber Home Loans, Inc., et al.      26-67149

PLAINTIFFS' MOTION TO SET ASIDE DISMISSAL

TENTATIVE RULING: Plaintiffs' Motion is DENIED. Plaintiffs claim they "were not familiar with the processes and procedures of litigation and were further unaware that an amended complaint was required to be filed within a certain time or at all." This is in direct contradiction with the court's Minute Order of May 31, 2016, which documents that Plaintiff George Noble was present and ordered by the court "to file a 2nd Amended Complaint within 30 days of today." Plaintiffs never filed an amended complaint, despite the court's direct order. Furthermore, the July 5, 2016 Minute Order reflects that Plaintiff George Noble informed the court he wished to withdraw his complaint. The record in this case does not show the dismissal was entered as a result of Plaintiffs' mistake, inadvertence, surprise, or excusable neglect.

**CERTIFICATE OF SERVICE**

2    I hereby certify that on April 28, 2017, I electronically filed the foregoing

3  document entitled  **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF**

4  **DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

5  **PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**  with

6  the Clerk of the Court for the United States District Court, Northern District of

7  California using the CM/ECF system and served a copy of same upon all counsel of

8  record via the Court's electronic filing system.

9

10

11                        By: /s/      _Deleyla A. Lawrence_

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Discovery disputes** will be referred to a Magistrate Judge. After the parties have met and conferred, the parties shall prepare a joint letter of not more than 8 pages explaining the dispute. Up to 12 pages of attachments may be added. The joint letter must be electronically filed under the Civil Events category of "Motions and Related Filings >Motions-- General > Discovery Letter Brief." The Magistrate Judge to whom the matter is assigned will advise the parties of how that Judge intends to proceed. The Magistrate Judge may issue a ruling, order more formal briefing, or set a telephone conference or a hearing. After a Magistrate Judge has been assigned, all further discovery matters shall be filed pursuant to that Judge's procedures.

**Motions for Summary Judgment:** Absent permission from the Court, all case-dispositive motions in a case will be briefed and heard together, on the case-dispositive motion hearing cut-off date, or on an earlier available date agreed to by the parties. Multiple parties should file joint briefs if possible. If Plaintiffs wish to file a motion for summary judgment, they shall do so 6 weeks before the cut-off date. If Defendants wish to file a cross-motion as well as an opposition to the motion, any cross-motion shall be contained within the opposition to the motion, which may contain up to 25 pages in total, and shall be filed 14 days after the filing of the motion. The reply to the motion shall include the opposition to any cross-motion, may contain up to 15 pages in total, and shall be filed 7 days after the filing of the opposition. A reply to any cross-motion may contain up to 15 pages, and shall be filed 7 days after the filing of the opposition. If Plaintiffs do not file a motion for summary judgment, Defendants may file one 5 weeks before the case-dispositive motion hearing cut-off date and the schedule in Local Rule 7-3 shall apply. Courtesy copies of multi-page exhibits for chambers should be clearly marked with tabbed dividers.

**Civil motion calendar** is conducted on Tuesdays at 2:30 p.m. Parties need not reserve a hearing date for civil motions; however, parties must check the legal newspapers or the Court's website at www.cand.uscourts.gov for unavailable dates.

**A Further Case Management Conference** will be held on the case-dispositive motion hearing cut-off date, whether or not dispositive motions are filed.

Dated:

_____

CLAUDIA WILKEN
United States District Judge

2

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2017, I electronically filed the foregoing document entitled **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** with the Clerk of the Court for the United States District Court, Northern District of California using the CM/ECF system and served a copy of same upon all counsel of record via the Court's electronic filing system.

By: /s/     *Deleyla A. Lawrence*